## IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS
## CIVIL COURT DEPARTMENT

| | | |
|---|---|---|
| **MNR LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.** |
| | ) | **Division:** |
| **LIBERTY MUTUAL INSURANCE** | ) | |
| **COMPANY,** | ) | |
| **Serve: Commissioner of Insurance** | ) | |
| **Kansas Insurance Department** | ) | |
| **420 SW 9ᵗʰ Street** | ) | |
| **Topeka, KS 66612,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## PETITION

COMES NOW Plaintiff, MNR LLC d/b/a Hampton Inn, by and through its counsel of record, and for its Petition against Defendant Liberty Mutual Insurance Company ("Liberty Mutual" or "Defendant") states as follows:

1.      Plaintiff brings this action against Defendant due to Defendant's failure to provide insurance coverage for the losses sustained and expenses incurred to Plaintiff because of the ongoing Coronavirus (COVID-19) pandemic.

2.      For several years Plaintiff has operated two hotels; one in Littleton, Colorado and one in Longmont, Colorado. Plaintiff's operations have been and continue to be suspended and threatened by the Novel Coronavirus, which causes the infectious disease COVID-19 ("COVID-19").

3.      On March 11, 2020 the World Health Organization declared the COVID-19 outbreak a worldwide pandemic: "WHO has been assessing this outbreak around the clock and we are deeply concerned by both the alarming levels of spread and severity, and by the alarming levels

of inaction. We have therefore made the assessment that COVID-19 can be characterized as a pandemic." [1]

4.      On March 16, 2020 the Centers for Disease Control and Prevention and members of the National Coronavirus Task Force issued to the American Public guidance styled as "Thirty Days to Slow the Spread" for stopping the spread of COVID-19. This guidance advised individuals to adopt far-reaching social distancing measures, such as working from home, avoiding shopping trips and gatherings of more than 10 people, and staying away from bars, restaurants, gyms and food courts.[2]

5.      Following this advice, many state governments, including Colorado, took measures in the form of emergency orders to protect the health and safety of their residents from the human-to-human and surface-to-human spread of COVID-19.

6.      As a result, many governmental entities, including Colorado, entered Civil Authority Orders suspending or severely limiting business operations of "non-essential businesses" that interact with the public and provide gathering places for the individuals.

7.      Over forty (40) states within the United States issued some type of "stay-at-home" emergency order closing private non-essential business operations.

8.      The result of these closures has been catastrophic for most of the non-essential businesses, especially retail establishments that were forced to close, furlough employees, and endure a sudden shut-down of cash flow that threatens their survival.

---

[1] See https://www.who.int/dg/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19 11-March-2020
[2] https://www.whitehouse.gov/wp-content/uploads-2020/03/03.16.20coronavirus.guidance 8.5x11 315pm.pdf

*Clerk of the District Court, Johnson County Kansas*
*07/10/20  09:38am ST*

9.     Many businesses pay significant premiums to insure against such catastrophic events like the government-issued orders mandating suspension of business activities through all-risk commercial property insurance policies.

10.     These policies promise to indemnify the policy holder for actual business losses incurred when business operations are involuntarily suspended, interrupted, curtailed, when public access is prohibited because of direct physical loss or damage to the property, or by civil authority order that restricts or prohibits access to the property. This coverage, generally known as "business interruption coverage," is standard in most all-risk commercial property insurance policies.

11.     Defendant is denying its obligation to pay for business income losses and other covered expenses incurred by Plaintiff for the physical loss and damage to the insured property from measures put in place by the civil authorities to stop the spread of COVID-19 among the population.

12.     Plaintiff, through this action, seeks a declaratory judgment that affirms that the orders issued by civil authorities to stop the spread of the COVID-19 outbreak triggers coverage, has caused physical property loss and damage to the insured property, provides coverage for future civil authority orders that result in future suspensions or curtailments of business operations and finds that Defendant is liable for the losses suffered by Plaintiff.

13.     In addition, this action brings claim against Defendant for its breach of its contractual obligation under common all-risk commercial property insurance policies to indemnify Plaintiff and others similarly situated for business losses and extra expenses, and related losses resulting from actions taken by civil authorities to stop the human-to-human and surface-to-human spread of the COVID-19 outbreak.

### Jurisdiction and Venue

3

14.     This Court has jurisdiction over this matter in that Plaintiff is a Kansas limited liability company and Defendant is engaged in providing policies of insurance in this state.

15.     Venue is proper in this Court under the provisions of K.S.A. 60-604.

### Parties

16.     MNR, LLC is a Kansas limited liability company active and in good standing.

17.     MNR, LLC's registered office is located at 15520 S. Mahaffie Street, Olathe, Kansas 66062.

18.     MNR, LLC operates two (2) Hampton Inns, one located at 7611 Shaffer Parkway, Littleton, Colorado 80127-3005 and one at 850 S. Main St., Longmont, Colorado 80501-6457.

19.     Liberty Mutual is one of the world's largest property and casualty insurers with its principal place of business located at 175 Berkley St., Boston, MA.

20.     Liberty Mutual through its subsidiaries, directly and indirectly, issue among other things, property insurance.

21.     Liberty Mutual issued to Plaintiff policy number DKS (20) 55 15 90 54 for the policy period between July 25, 2019 to July 25, 2020 (the "Policy").

22.     Plaintiff has continually and without interruption paid the policy premiums to Liberty Mutual specifically to provide coverages for coverage of loss, business income, and extra expenses in the event of an involuntary business interruption.

### Factual Background

23.     Liberty Mutual's insurance policies issued to Plaintiff are "all-risk" commercial property policies that cover loss or damage to the covered premises resulting from all risk other than those expressly excluded.

24.     Plaintiff did not participate in the drafting or negotiating of the policies with Liberty Mutual.

25.     The policy includes standard forms used by Liberty Mutual for all insureds having applicable coverage.

26.     Among the coverages provided by the policy was business interruption insurance which, generally, would indemnify Plaintiff for lost income and profits if its business were shut down.

27.     The Business Income (and extra expense) Coverage Form, Commercial Property Form CP 00 30 10 12 in the policy provided coverage for Plaintiff as follows:

> We will pay for the actual loss of business income you sustain due to the necessary "suspension" of your "operations" during your "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit Of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of such premises.

In the same policy form, the Policy provided the following additional coverage for Plaintiff:

> 5. **Additional Coverages**
>
> a.  **Civil Authority**
> In this Additional Coverage, Civil Authority, the described premises or premises to which this Coverage Form applies, as shown in the Declarations.
> When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustained and necessary Extra Expenses caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:
> (1)   Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the

*Clerk of the District Court, Johnson County Kansas*
*07/10/20  09:38am ST*

damage and the described premises are within that area but are not more than one mile from the damaged property; and

(2)   The action of civil authority is taken in response to dangerous physical conditions resulting from a damage or continuation of the covered cause of loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Civil Authority Coverage for Business Income will begin 72 hours after the time of the first action of civil authority that prohibits access to the described premises and will apply for a period of up to four consecutive weeks from the date on which such coverage began.

Civil Authority Coverage for Extra Expense will begin immediately after the time of the first action of civil authority that prohibits access to the described premises and will end:

(1)   Four consecutive weeks from the date of that action; or when the civil authority for business income ends; whichever is later; or

(2)   When the Civil Authority Coverage for Business Income ends; whichever is later.

28.   The Business Income (and Extra Expense) Coverage Form defines Business

Income as:

a.   Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and

b.   Continuing normal operating expenses incurred, including payroll.

29.   The Business Income (and Extra Expense) Coverage Form defines Extra

Expense as:

Necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.

We will pay Extra Expense (other than the expense to repair or replace property to:

(1) Avoid or minimize the "suspension" of business and to continue operations at the described premises or at the described premises or at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location.

(2) Minimize the "suspension" of business if you cannot continue "operations."

*Clerk of the District Court, Johnson County Kansas*
*07/10/20  09:38am ST*

> We will also pay Extra Expense to repair or replace property, but only to the extent it reduces the amount of loss that otherwise would have been payable under this Coverage Form.

30.     Plaintiff has suffered a direct physical loss of and damage to its property because they have been unable to use its property for its intended purpose.

31.     On or about April 14, 2020, Plaintiff was advised its claim with Liberty Mutual for Business Interruption Insurance was denied because Plaintiff had allegedly not suffered direct physical loss or damage for purposes of that coverage and that no surrounding property had suffered direct physical loss or damages or for purposes of the Civil Authority Coverage.

32.     Defendant Liberty Mutual's denial was wrongful because Plaintiff had suffered direct physical loss or damage within the definition of the policy.

33.     As the drafter of the policy, if Defendant Liberty Mutual had wished to exclude from coverage as "physical loss or damage" loss of use of property that has not been physically altered, it could have used explicit language stating such definition of "physical loss or damage". It did not do so.

34.     Any virus and bacteria endorsement does not apply because Plaintiff's losses were not caused by a "virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease". Rather, the proximate cause of Plaintiff's losses were cautionary measures taken by the State of Colorado and other government authorities to prevent the spread of COVID-19 in the future, not because Coronavirus was found in or on Plaintiff's insured property.

### The Colorado Closure Orders

35.     On March 11, 2020, Colorado Governor Jared Polis issued Executive Order D 2020 003 which declared a Disaster Emergency due to the Covid-19 outbreak.

*Clerk of the District Court, Johnson County Kansas*
*07/10/20 09:38am ST*

36.     On March 22, 2020, Colorado Governor Jared Polis issued Executive Order D 2020 013 which ordered employers to reduce the in-person workforce by fifty percent.

37.     On March 25, 2020, Colorado Governor Jared Polis issued Executive Order D 2020 017 which ordered Coloradans to stay home and directed businesses to close.  On April 6, 2020, Governor Jared Polis issued Executive Order D 2020 024, which extended Executive Order D 2020 017 to April 26, 2020.

### COUNT I – DECLARATORY JUDGMENT-BUSINESS INCOME COVERAGE

38.     Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 37 as if fully set forth herein.

39.     Policies or contracts under which Liberty Mutual was paid premium in exchange for its promise to pay Plaintiff's losses for claims covered by the policies.

40.     Plaintiff has complied with all applicable provisions of the policies and/or those provisions have been waived by Liberty Mutual or Liberty Mutual is estopped from asserting them, and yet Liberty Mutual has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms and have wrongfully and illegally refused to provide coverage for which Plaintiff is entitled.

41.     Liberty Mutual has denied claims related to COVID-19 on a uniform basis, without individual basis's or investigations, so the Court can render a Declaratory Judgment.

42.     Pursuant to KSA 60-1701, *et seq.*, an actual case or controversy exists regarding Plaintiff's rights and Liberty Mutual's obligations under the policies to reimburse Plaintiff for the full amount of Business Income Losses incurred by Plaintiff in connection with the suspension of its businesses stemming from orders intended to mitigate the COVID-19 pandemic.

43.     Pursuant to KSA 60-1701 *et seq.*, Plaintiff seeks a Declaratory Judgment from this Court declaring the following:

1. Plaintiff's Business Income Losses incurred in connection with the Closure Order and the necessary interruption of its business stemming from orders intended to mitigate the COVID-19 pandemic are insured losses under its policy; and

2. Liberty Mutual is obligated to pay Plaintiff for the full amount of Business Income Losses related to the Closure Order during the period of restoration and the necessary interruption of its businesses stemming from the orders intended to mitigate the COVID-19 pandemic.

## COUNT II – BREACH OF CONTRACT-BUSINESS INCOME COVERAGE

44.     Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 43 as if fully set forth herein.

45.     The Policies issued by Liberty Mutual are contracts whereby Liberty Mutual was paid premium in exchange for its promise to pay Plaintiff's losses for claims covered by the Policies.

46.     In the Business Income (and Extra Expense) Coverage Form, Liberty Mutual agreed to pay for its insureds' actual loss of Business Income sustained due to the necessary suspension of its operations during the "period of restoration."

47.     In the Business Income (and Extra Expense) Coverage Form, Liberty Mutual agreed to pay for its insureds' actual loss of Business Income sustained due to the necessary "suspension" of its operations during the "period of restoration" caused by direct physical loss or damage. "Business Income" under the Policy means the "net income (net profit or loss before

income taxes) that would have been earned or incurred if no physical loss or damage had occurred", as well as "[c]ontinuing the normal operating expenses incurred, including payroll".

48.    The Closure Orders referred to above (the "Closure Orders") caused direct physical loss and damage to Plaintiff requiring suspension of operations. Losses caused by these Orders thus triggered the Business Income provision of Plaintiff's Policies.

49.    Plaintiff has complied with all applicable provisions of the Policy and/or those provisions have been waived by Liberty Mutual or Liberty Mutual is now estopped from asserting them and yet Liberty Mutual has abrogated its insurance coverage obligations pursuant to the Policies' clear and unambiguous terms.

50.    By denying coverage for any Business Income Losses incurred by Plaintiff as a result of the Orders, Liberty Mutual has breached its coverage obligations under the Policies.

51.    Because of Liberty Mutual's breaches of the Policies, Plaintiff has sustained substantial damages for which Liberty Mutual is liable, in an amount to be established at trial.

## COUNT III –ANTICIPATORY BREACH OF CONTRACT

52.    Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 51 as if fully set forth herein.

53.    The Policy is a contract under which Liberty Mutual was paid premium in exchange for its promise to pay Plaintiff's losses for claims covered by the Policy.

54.    In the Business Income (and Extra Expense) Coverage Form, Liberty Mutual agreed to pay for its insureds' actual loss of Business Income sustained due to the necessary suspension of its operations during the "period of restoration."

55.    In the Business Income (and Extra Expense) Coverage Form, Liberty Mutual agreed to pay for its insureds' actual loss of business Income stained due to the necessary

*Clerk of the District Court, Johnson County Kansas*
*07/10/20  09:38am ST*

"suspension" its "operations" during the "period of restoration" caused by the direct physical or damage. A "partial slow down or complete cessation" of business activities of the covered property is a "suspension" under the Policy for which Liberty Mutual agreed to pay for loss of Business Income during the "period of restoration" "that occurs within 24 consecutive months after the date of direct physical loss or damage."

56.     "Business Income" under the policy means "net income (net profit or loss before income taxes) that would have been earned or incurred if no physical loss or damage had occurred", as well as "[c]ontinuing the normal operating expenses incurred, including payroll".

57.     The Closure Orders caused direct physical loss and damage to Plaintiff's covered properties, requiring suspension of operations at the covered properties. Losses caused by the Closure Order thus triggered the Business Income provisions of the Policies.

58.     Notwithstanding the foregoing, Liberty Mutual will pay Business Interruption Claims only if the subject property is physically altered.

59.     As a result, Liberty Mutual has anticipatorily breached the policies of Plaintiff who has suffered physical loss or damage to the property because the use of the property has been substantially impaired and, thus, would be entitled to coverage under their Policies under applicable law, but for Liberty Mutual's anticipatory breach of contract.

60.     Plaintiff has complied with all applicable provisions of its Policy and/or Liberty Mutual has waived those provisions or Liberty Mutual is estopped from asserting them, and yet Liberty Mutual has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms.

61.     Because of Liberty Mutual's breaches of the policies, Plaintiff has sustained substantial damages for which Liberty Mutual is liable in an amount to be established at trial.

*Clerk of the District Court, Johnson County Kansas*
*07/10/20  09:38am ST*

## COUNT IV – DECLARATORY JUDGMENT-CIVIL AUTHORITY COVERAGE

62.     Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 61 as if fully set forth herein.

63.     The Policy is a contract under which Liberty Mutual was paid premium in exchange for its promise to pay Plaintiff's losses for claims covered by the Policy.

64.     Plaintiff has complied with all applicable provisions of its Policy and/or Liberty Mutual has waived those provisions or Liberty Mutual is estopped from asserting them, and yet Liberty Mutual has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage for which Plaintiff is entitled.

65.     Liberty Mutual has denied claims related to COVID-19.

66.     An actual case or controversy exists regarding Liberty Mutual's obligations under the Policy to reimburse Plaintiff for the full amount of coverage Civil Authority Losses incurred by Plaintiff in connection with Closure Orders and the necessary interruption of its businesses stemming from the Orders intended to mitigate the COVID-19 Pandemic.

67.     Pursuant to KSA 60-1701 *et seq.*, Plaintiff seeks Declaratory Judgment from this Court declaring the following:

1.  Plaintiff's Civil Authority Losses incurred in connection with the Closure Orders and the necessary interruption of its businesses stemming from the COVID-19 Pandemic are insured losses under the Policy; and

2.  Liberty Mutual is obligated to pay Plaintiff the full amount of the Civil Authority Losses incurred and to be incurred in connection with the covered losses related to the Closure Orders and the necessary interruption of its

12

businesses stemming from the Orders intended to mitigate the COVID-19 Pandemic.

## COUNT V – BREACH OF CONTRACT-CIVIL AUTHORITY COVERAGE

68.     Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 67 as if fully set forth herein.

69.     The Policy is a contract under which Liberty Mutual was paid premium in exchange for its promise to pay Plaintiff's losses for claims covered by the Policy.

70.     Liberty Mutual Business Income (and Extra Expense) Coverage Form provides "Civil Authority" coverage, which promises to pay "the actual loss of Business Income you sustain and necessary Extra Expense caused by action of Civil Authority that prohibits access to the described premises, provided that both of the following apply:

> (1)  Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage and the described premises are within that area but are not more than one mile from the damaged property; and
> (2)  The action of civil authority is taken in response to dangerous physical conditions resulting from a damage or continuation of the covered cause of loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property."

71.     The Closure Orders triggered the Civil Authority provision under the Policy.

72.     Plaintiff has complied with all applicable provisions of its Policy and/or Liberty Mutual has waived those provisions or Liberty Mutual is estopped from asserting them, and yet Liberty Mutual has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage for which Plaintiff is entitled.

*Clerk of the District Court, Johnson County Kansas*
*07/10/20  09:38am ST*

73.     By denying coverage for any Business Losses incurred by Plaintiff in connection with the Closure Orders and Orders intended to mitigate the COVID-19 Pandemic, Liberty Mutual has breached its coverage obligation under the Policy.

74.     Because of Liberty Mutual's breaches under the Policy, Plaintiff has sustained substantial damages for which Liberty Mutual is liable, in an amount to be established at Trial.

### COUNT VI – DECLARATORY JUDGMENT-EXTRA EXPENSE COVERAGE

75.     Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 74 as if fully set forth herein.

76.     The Policy is a contract under which Liberty Mutual was paid premium in exchange for its promise to pay Plaintiff's losses for claims covered by the Policy.

77.     Plaintiff has complied with all applicable provisions of its Policy and/or Liberty Mutual has waived those provisions or Liberty Mutual is estopped from asserting them, and yet Liberty Mutual has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiff is entitled.

78.     Liberty Mutual has denied claims related to COVID-19.

79.     An actual case or controversy exists regarding Liberty Mutual's obligation under the Policy to reimburse Plaintiff for the full amount of Extra Expense Losses incurred by Plaintiff in connection with Closure Orders and the necessary interruption of its businesses stemming from Orders intended to mitigate the COVID-19 Pandemic.

80.     Pursuant to KSA 60-1701 *et seq*., Plaintiff seeks Declaratory Judgment from this Court declaring the following:

*Clerk of the District Court, Johnson County Kansas*
*07/10/20  09:38am ST*

1. Plaintiff's Business Income Losses incurred in connection with the Closure Order and the necessary interruption of its business stemming from orders intended to mitigate the COVID-19 pandemic are insured losses under its policy; and

2. Liberty Mutual is obligated to pay Plaintiff for the full amount of Extra Expenses Losses incurred and to be incurred in connection with the Covered Losses related to the Closure Order during the period of restoration and the necessary interruption of its businesses stemming from the orders intended to mitigate the COVID-19 pandemic.

## COUNT VII – BREACH OF CONTRACT-EXTRA EXPENSE COVERAGE

81.     Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 80 as if fully set forth herein.

82.     The Policy is a contract under which Liberty Mutual was paid premium in exchange for its promise to pay Plaintiff's losses for claims covered by the Policy.

83.     In the Business Income (and Extra Expense) Coverage Form, Liberty Mutual also agreed to pay necessary Extra Expenses that its insureds incur during the "period of restoration" that the insureds would not have incurred if there had been no direct physical loss or damage to the described premises. "Extra Expense" means expenses "to avoid or minimize the "suspension" of business and to continue operations" and to repair or replace property.

84.     Due to the Closure Orders, Plaintiff incurred Extra Expense of covered property.

85.     Plaintiff has complied with all applicable provisions of its Policy and/or Liberty Mutual has waived those provisions or Liberty Mutual is estopped from asserting them, and yet

*Clerk of the District Court, Johnson County Kansas*
*07/10/20  09:38am ST*

Liberty Mutual has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms.

86.     By denying coverage for any Business Losses incurred by Plaintiff in connection with the Closure Orders and Orders intended to mitigate the COVID-19 Pandemic, Liberty Mutual has breached its coverage obligation under the Policies.

87.     Because of Liberty Mutual's breaches of the Policies, Plaintiff has sustained substantial damages for which Liberty Mutual is liable in an amount to be established at trial.

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

1.  Issuing a Declaratory Judgment declaring the parties' rights and obligations under the policy;

2.  Awarding Plaintiff compensatory damages from Liberty Mutual's breach of the policy in an amount to be determined at trial, together with appropriate pre-judgment interest at the maximum rate allowed by law;

3.  Awarding Plaintiff costs and reasonable allowance for the fees of Plaintiff and reimbursement of expenses; and

4.  Awarding such other and further relief the Court deems just, proper and equitable.

Respectfully submitted,

**BROWN & RUPRECHT, PC**

By:  */s/Kurt S. Brack*
Kurt S. Brack, KS Bar #14797
2323 Grand Blvd, Suite 1100
Kansas City, MO  64108
(816) 292-7000
(816) 292-7050 (Fax)
kbrack@brlawkc.comn
**Attorneys for Plaintiff**

*Clerk of the District Court, Johnson County Kansas*
*07/10/20  09:38am ST*

IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS
CIVIL COURT DEPARTMENT


MNR  LLC
                              Plaintiff                     Case No: 20CV02929
              vs                                            Division:   4
                                                           K.S.A. Chapter 60
LIBERTY MUTUAL INSURANCE COMPANY
                              Defendant


REQUEST AND SERVICE INSTRUCTION FORM


To:  Clerk of the District Court:


Please issue a SUMMONS and PETITION in this action for LIBERTY MUTUAL INSURANCE
COMPANY whose address for service is:

        COMMISSIONER OF INSURANCE, KANSAS INSURANCE DEPT.; 420 SW 9TH STREET
        TOPEKA, KS 66612


Service by an authorized process server.


PLEASE ALLOW 40 DAYS FOR DEFENDANT TO RESPOND TO SUBPOENA.



                              By: /s/ KURT S BRACK
                              KURT S BRACK, #14797
                              2323 GRAND BLVD STE 1100
                              KANSAS CITY, MO 64108
                              816-292-7000




*Clerk of the District Court, Johnson County Kansas*
*07/10/20  09:38am ST*

017

20CV02929
Div4

## IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS
## CIVIL COURT DEPARTMENT

**MNR LLC,**

                    **Plaintiff,**

**v.**                                                    **Case No.  20CV02929**
                                                          **K.S.A. Chapter 60**
                                                          **Division 4**
**LIBERTY MUTUAL INSURANCE COMPANY,**

                    **Defendant.**


## REQUEST AND SERVICE INSTRUCTION FORM


TO:  Clerk of the District Court

Please issue a SUMMONS and PETITION in this action for LIBERTY MUTUAL INSURANCE COMPANY whose address for service is:

> COMMISSIONER OF INSURANCE, KANSAS INSURANCE DEPT.; 420 SW 9TH STREET, TOPEKA, KS 66612

Service by an authorized process server.

PLEASE ALLOW 40 DAYS FOR DEFENDANT TO RESPOND TO SUBPOENA.

                    BROWN & RUPRECHT PC

                    By: */s/Kurt S. Brack*
                    KURT S. BRACK #14797
                    2323 Grand Blvd., Suite 1100
                    Kansas City, MO 64108
                    (816) 292-7000
                    kbrack@brlawkc.com
                    Attorney for Plaintiff


*Clerk of the District Court, Johnson County Kansas*
*07/27/20  09:34am ML*

018

# STATE OF KANSAS
## DEPARTMENT OF INSURANCE

# COMMISSIONER'S PROOF OF SERVICE

MNR, LLC

Plaintiff

VS.

Liberty Mutual Insurance Company

Defendant

Case No.  20CV02929

District Court
Johnson County
Olathe, Kansas

I, Vicki Schmidt, Commissioner of Insurance, do hereby certify that on July 29, 2020, I received the Summons and Petition in the above captioned case.

Pursuant to K.S.A. 40-218, a copy thereof was forwarded by certified mail, return receipt requested to:

Liberty Mutual Insurance Company
C/o Corporation Service Company
2900 SW Wanamaker Dr., Ste. 204
Topeka, Kansas  66614

DISPOSITION:  Clerk is to indicate final disposition on second copy and forward same to:  KANSAS COMMISSIONER OF INSURANCE, 1300 SW ARROWHEAD ROAD, TOPEKA, KANSAS, 66604.



IN WITNESS WHEREOF, I have hereunto set my hand and affixed my Official Seal at the City of Topeka, this 29th day of July, 2020.

Vicki Schmidt
Commissioner of Insurance

BY:

Justin L. McFarland
General Counsel

CLERK OF DISTRICT COURT
JOHNSON COUNTY, KS
2020 AUG -4  AM 11: 36

IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS
CIVIL COURT DEPARTMENT

MNR LLC,

                Plaintiff

     vs

LIBERTY MUTUAL INSURANCE COMPANY,
                Defendant

Case No: 20CV02929
Division:   4
K.S.A. Chapter 60

SUMMONS

To the above-named defendant:

    YOU ARE HEREBY NOTIFIED that an action has been commenced against you in this court. You are required to file your answer to the petition with the court and to serve a copy upon the plaintiff's attorney, as follows:

        Name:   KURT S BRACK
        Address: 2323 GRAND BLVD STE 1100
                  KANSAS CITY, MO 64108
        Phone:  (816) 292-7000

Within 40 days after service of summons upon you.

    If you fail to do so, judgment by default will be taken against you for the relief demanded in the attached petition, which is incorporated herein by reference. Any related claim which you may have against the plaintiff must be stated as a counterclaim in your answer, or you will thereafter be barred from making such claim in any other action.



                                     /s/ Jennie Leach
                                     Clerk of the District Court

Dated:   July 27, 2020

Johnson County Court House, 100 N. Kansas Ave.  Olathe, KS 66061

Clerk of the District Court, Johnson County Kansas
7/27/2020 16:11:09 ML

20CV02929
Div4

## IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS
## CIVIL COURT DEPARTMENT

MNR, LLC,          )
                          )

     Plaintiff,       )
                          )

v.                     )     **Case No. 20CV02929**
                          )     **Division 4**

LIBERTY MUTUAL INSURANCE   )
COMPANY,              )
                          )

     Defendant      )

## <u>ANSWER AND AFFIRMATIVE DEFENSES</u>

Defendant Liberty Mutual Insurance Co. ("Liberty Mutual"), improperly named as defendant issuing the insurance policy that is the subject of this action, by its attorneys, for its Answer in response to Plaintiffs' Petition, states as follows:

1.     Plaintiff brings this action against Defendant due to Defendant's failure to provide insurance coverage for the losses sustained and expenses incurred to Plaintiff because of the ongoing Coronavirus (COVID-19) pandemic.

**<u>ANSWER:</u>**    Liberty Mutual admits that Plaintiff has brought this action against Liberty Mutual.  Liberty Mutual denies the remaining allegations of paragraph 1 of the Petition.

2.     For several years Plaintiff has operated two hotels; one in Littleton, Colorado and one in Longmont, Colorado. Plaintiffs operations have been and continue to be suspended and threatened by the Novel Coronavirus, which causes the infectious disease COVID-19 ("COVID-19").

*Clerk of the District Court, Johnson County Kansas*
*09/08/20  10:36am VV*

**ANSWER:**   Liberty Mutual admits that the scientific community refers to SARS-CoV-2 as the coronavirus and COVID-19 as the disease from the coronavirus.   As to the remaining allegations in paragraph 2 of the Petition, Liberty Mutual is without knowledge or information sufficient to form a belief as to the truth of the allegations and, accordingly, denies the same.

3.     On March 11, 2020 the World Health Organization declared the COVID-19 outbreak a worldwide pandemic: "WHO has been assessing this outbreak around the clock and we are deeply concerned by both the alarming levels of spread and severity, and by the alarming levels of inaction. We have therefore made the assessment that COVID-19 can be characterized as a pandemic."

**ANSWER:**   Liberty Mutual admits the allegations in paragraph 3 of the Petition.

4.     On March 16, 2020 the Centers for Disease Control and Prevention and members of the National Coronavirus Task Force issued to the American Public guidance styled as "Thirty Days to Slow the Spread" for stopping the spread of COVID-19. This guidance advised individuals to adopt far-reaching social distancing measures, such as working from home, avoiding shopping trips and gatherings of more than 10 people, and staying away from bars, restaurants, gyms and food courts.

**ANSWER:**   Liberty Mutual denies that the url provided by the Plaintiff in paragraph 4 of the Petition is accurate.  Answering further, Liberty Mutual states that the document referenced in paragraph 4 speaks for itself, and Liberty Mutual denies any allegations in paragraph 4 that are inconsistent with it.  As to the remaining allegations in paragraph 4

*Clerk of the District Court, Johnson County Kansas*
*09/08/20  10:36am VV*

of the Petition, Liberty Mutual is without knowledge or information sufficient to form a belief as to the truth of the allegations and, accordingly, denies the same.

5.      Following this advice, many state governments, including Colorado, took measures in the form of emergency orders to protect the health and safety of their residents from the human to-human and surface-to-human spread of COVID-19.

**ANSWER:**   Liberty Mutual admits that many state governments issued orders to preserve public health and safety, to ensure that the healthcare delivery system is capable of serving those who are sick, and to slow and stop the spread of the coronavirus and Covid-19.  Liberty Mutual further states that such orders are not attached to or quoted in their entirety in the Petition and speak for themselves, and denies any allegations in paragraph 5 that are inconsistent with these orders.  Liberty Mutual denies the remaining allegations in paragraph 5 of the Petition.

6.      As a result, many governmental entities, including Colorado, entered Civil Authority Orders suspending or severely limiting business operations of "non-essential businesses" that interact with the public and provide gathering places for the individuals.

**ANSWER:**   Liberty Mutual admits that many state governments issued orders to preserve public health and safety, to ensure that the healthcare delivery system is capable of serving those who are sick, and to slow and stop the spread of the coronavirus and Covid-19.  Liberty Mutual further states that such orders are not attached to or quoted in their entirety in the Petition and speak for themselves, and denies any allegations in paragraph 6 that are inconsistent with these orders.  Liberty Mutual denies the remaining allegations in paragraph 6 of the Petition.

*Clerk of the District Court, Johnson County Kansas*
*09/08/20  10:36am VV*

37126262.3

7.      Over forty (40) states within the United States issued some type of "stay-at-home" emergency order closing private non-essential business operations.

**ANSWER:**   Liberty Mutual admits that many state governments issued orders to preserve public health and safety, to ensure that the healthcare delivery system is capable of serving those who are sick, and to slow and stop the spread of the coronavirus and Covid-19.  Liberty Mutual further states that such orders are not attached to or quoted in their entirety in the Petition and speak for themselves, and denies any allegations in paragraph 7 that are inconsistent with these orders.  Liberty Mutual denies the remaining allegations in paragraph 7 of the Petition.

8.      The result of these closures has been catastrophic for most of the non-essential businesses, especially retail establishments that were forced to close, furlough employees, and endure a sudden shut-down of cash flow that threatens their survival.

**ANSWER:**   Liberty Mutual is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 8 of the Petition and, accordingly, denies the same.

9.      Many businesses pay significant premiums to insure against such catastrophic events like the government-issued orders mandating suspension of business activities through all-risk commercial property insurance policies.

**ANSWER:**   Liberty Mutual denies the allegations in paragraph 9 insofar as they relate to it and is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 9 of the Petition and, accordingly, denies the same.

*Clerk of the District Court, Johnson County Kansas*
*09/08/20  10:36am VV*

10.     These policies promise to indemnify the policy holder for actual business losses incurred when business operations are involuntarily suspended, interrupted, curtailed, when public access is prohibited because of direct physical loss or damage to the property, or by civil authority order that restricts or prohibits access to the property. This coverage, generally known as "business interruption coverage," is standard in most all-risk commercial property insurance policies.

**ANSWER:**   Liberty Mutual states that the policy issued to Plaintiff and at issue in this action is subject to all of the terms, conditions, limitations, and exclusions set forth therein and denies the allegations in paragraph 10 to the extent that they are inconsistent with those terms, conditions, limitations, and exclusions.  As to the remaining allegations in paragraph 10 of the Petition, Liberty Mutual is without knowledge or information sufficient to form a belief as to the truth of the allegations and, accordingly, denies the same.

11.     Defendant is denying its obligation to pay for business income losses and other covered expenses incurred by Plaintiff for the physical loss and damage to the insured property from measures put in place by the civil authorities to stop the spread of COVID-19 among the population.

**ANSWER:**   Liberty Mutual denies the allegations in paragraph 11 of the Petition.

12.     Plaintiff, through this action, seeks a declaratory judgment that affirms that the orders issued by civil authorities to stop the spread of the COVID-19 outbreak triggers coverage, has caused physical property loss and damage to the insured property, provides coverage for future civil authority orders that result in future suspensions or

curtailments of business operations and finds that Defendant is liable for the losses suffered by Plaintiff.

**ANSWER:**   Liberty Mutual admits that Plaintiff seeks a declaratory judgment on the issues described in paragraph 12 of the Petition and denies that Plaintiff is entitled to declaratory judgment on these issues.  Liberty Mutual denies any remaining allegations in paragraph 12.

13.     In addition, this action brings claim against Defendant for its breach of its contractual obligation under common all-risk commercial property insurance policies to indemnify Plaintiff and others similarly situated for business losses and extra expenses, and related losses resulting from actions taken by civil authorities to stop the human-to-human and surface-to-human spread of the COVID-19 outbreak.

**ANSWER:**   Liberty Mutual admits that Plaintiff brings a claim for breach of contract with respect to the issues described in paragraph 13 of the Petition and denies that Plaintiff is entitled to any relief with respect to this claim.  Liberty Mutual denies any remaining allegations in paragraph 13.

<u>**Jurisdiction and Venue**</u>

14.     This Court has jurisdiction over this matter in that Plaintiff is a Kansas limited liability company and Defendant is engaged in providing policies of insurance in this state.

**ANSWER:**   The allegations in paragraph 14 of the Complaint state legal conclusions to which no response is required.  To the extent a response is deemed necessary, Liberty Mutual is without knowledge or information sufficient to form a belief as to the truth of

37126262.3

*Clerk of the District Court, Johnson County Kansas*
*09/08/20  10:36am VV*

the allegation that Plaintiff is a Kansas limited liability company.  Liberty Mutual admits the remaining allegations contained in paragraph 14 of the Petition.

15.     Venue is proper in this Court under the provisions of K.S.A. 60-604.

**ANSWER:**     The allegations in paragraph 15 of the Complaint state legal conclusions to which no response is required.  To the extent a response is deemed necessary, Liberty Mutual is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 15 and reserves the right to remove this action to federal court upon confirmation of the citizenship of the members of Plaintiff, a Kansas limited liability company.

### Parties

16.     MNR, LLC is a Kansas limited liability company active and in good standing.

**ANSWER:**     Liberty Mutual is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 16 of the Petition and, accordingly, denies the same.

17.     MNR, LLC's registered office is located at 15520 S. Mahaffie Street, Olathe, Kansas 66062.

**ANSWER:**     Liberty Mutual is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 17 of the Petition and, accordingly, denies the same.

37126262.3

*Clerk of the District Court, Johnson County Kansas*
*09/08/20  10:36am VV*

18.     MNR, LLC operates two (2) Hampton Inns, one located at 7611 Shaffer Parkway, Littleton, Colorado 80127-3005 and one at 850 S. Main St., Longmont, Colorado 80501-6457.

**ANSWER:**   Liberty Mutual admits that MNR, LLC operates hotels at the listed addresses.  Liberty Mutual is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 18 of the Petition and, accordingly, denies the same.

19.     Liberty Mutual is one of the world's largest property and casualty insurers with its principal place of business located at 175 Berkley St., Boston, MA.

**ANSWER:**   Liberty Mutual admits that it is a property and casualty insurer and its principal place of business is 175 Berkeley Street, Boston, Massachusetts.  Liberty Mutual is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 19 of the Petition and, accordingly, denies the same.

20.     Liberty Mutual through its subsidiaries, directly and indirectly, issue among other things, property insurance.

**ANSWER:**   Liberty Mutual admits that it issues property insurance policies.  Liberty Mutual denies the allegations in paragraph 20 of the Petition to the extent that they mischaracterize Liberty Mutual's corporate structure.  The remaining allegations of paragraph 20 of the Petition are incomprehensible and accordingly, Liberty Mutual denies the same.

21.     Liberty Mutual issued to Plaintiff policy number DKS (20) 55 15 90 54 for the policy period between July 25, 2019 to July 25, 2020 (the "Policy").

37126262.3

*Clerk of the District Court, Johnson County Kansas*
*09/08/20  10:36am VV*

**ANSWER:**   Liberty Mutual denies that it issued the insurance policy referenced in paragraph 21 of the Petition and states that Policy No. BKS (2) 55 15 90 54 effective for the period from July 25, 2019 to July 25, 2020 (the "Policy") was issued by Ohio Security Insurance Company.  Liberty Mutual denies the remaining allegations of paragraph 21 of the Petition.

22.   Plaintiff has continually and without interruption paid the policy premiums to Liberty Mutual specifically to provide coverages for coverage of loss, business income, and extra expenses in the event of an involuntary business interruption.

**ANSWER:**   Liberty Mutual admits that Plaintiff has paid the premium due for the Policy.  Liberty Mutual admits that the Policy provides certain coverages and states that the Policy is subject to all of the terms, conditions, limitations, and exclusions set forth therein and denies the allegations in paragraph 22 of the Petition to the extent that they are inconsistent with those terms, conditions, limitations, and exclusions.  Liberty Mutual denies any remaining allegations in paragraph 22 of the Petition.

## Factual Background

23.   Liberty Mutual's insurance policies issued to Plaintiff are "all-risk" commercial property policies that cover loss or damage to the covered premises resulting from all risk other than those expressly excluded.

**ANSWER:**   Liberty Mutual denies that it issued the Policy.  Answering further, Liberty Mutual states that the Policy and any other insurance policies issued to Plaintiff by Ohio Security Insurance Company provide certain coverages and states that these policies are subject to all of the terms, conditions, limitations, and exclusions set forth therein and

37126262.3

*Clerk of the District Court, Johnson County Kansas
09/08/20  10:36am VV*

denies the allegations in paragraph 23 of the Petition to the extent that they are inconsistent with those terms, conditions, limitations, and exclusions.

24.     Plaintiff did not participate in the drafting or negotiating of the policies with Liberty Mutual.

**ANSWER:**   Liberty Mutual denies the allegations contained in paragraph 24 of the Petition.

25.     The policy includes standard forms used by Liberty Mutual for all insureds having applicable coverage.

**ANSWER:**   Liberty Mutual admits that the Policy includes various forms and further states that the Policy is subject to all of the terms, conditions, limitations, and exclusions set forth therein and denies the allegations in paragraph 25 of the Petition to the extent that they are inconsistent with those terms, conditions, limitations, and exclusions. Liberty Mutual denies the remaining allegations in paragraph 25 of the Petition.

26.     Among the coverages provided by the policy was business interruption insurance which, generally, would indemnify Plaintiff for lost income and profits if its business were shut down.

**ANSWER:**   Liberty Mutual states that the Policy provides business interruption coverage subject to all of the terms, conditions, limitations, and exclusions set forth therein and denies the allegations in paragraph 26 of the Petition to the extent that they are inconsistent with those terms, conditions, limitations, and exclusions. Liberty Mutual denies the remaining allegations in paragraph 26 of the Petition.

37126262.3

*Clerk of the District Court, Johnson County Kansas*
*09/08/20  10:36am VV*

27.     The Business Income (and extra expense) Coverage Form, Commercial

Property Form CP 00 30 10 12 in the policy provided coverage for Plaintiff as follows:

> We will pay for the actual loss of business income you sustain due
> to the necessary "suspension" of your "operations" during your
> "period of restoration". The "suspension" must be caused by direct
> physical loss of or damage to property at premises which are
> described in the Declarations and for which a Business Income
> Limit Of Insurance is shown in the Declarations. The loss or
> damage must be caused by or result from a Covered Cause of Loss.
> With respect to loss of or damage to personal property in the open
> or personal property in a vehicle, the described premises include
> the area within 100 feet of such premises.

In the same policy form, the Policy provided the following additional coverage for

Plaintiff:

5.      **Additional Coverages**

a.      **Civil Authority**
        In this Additional Coverage, Civil Authority, the described
        premises or premises to which this Coverage Form applies, as
        shown in the Declarations.
        When a Covered Cause of Loss causes damage to property
        other than property at the described premises, we will pay for
        the actual loss of Business Income you sustained and
        necessary Extra Expenses caused by action of civil authority
        that prohibits access to the described premises, provided that
        both of the following apply:
        (1)     Access to the area immediately surrounding the
                damaged property is prohibited by civil authority as a
                result of the damage and the described premises are
                within that area but are not more than one mile from
                the damaged property; and
        (2)     The action of civil authority is taken in response to
                dangerous physical conditions resulting from a
                damage or continuation of the covered cause of loss
                that caused the damage, or the action is taken to enable
                a civil authority to have unimpeded access to the
                damaged property.

37126262.3

*Clerk of the District Court, Johnson County Kansas*
*09/08/20  10:36am VV*

Civil Authority Coverage for Business Income will begin 72 hours after the time of the first action of civil authority that prohibits access to the described premises and will apply for a period of up to four consecutive weeks from the date on which such coverage began.

Civil Authority Coverage for Extra Expense will begin immediately after the time of the first action of civil authority that prohibits access to the described premises and will end:

> (1)    Four consecutive weeks from the date of that action; or when the civil authority for business income ends; whichever is later; or

(2)    When the Civil Authority Coverage for Business Income ends; whichever is later.

**ANSWER:**    Liberty Mutual denies that the Policy contains language as quoted in paragraph 27 of the Petition.  Answering further, Liberty Mutual states that the Policy is subject to all of the terms, conditions, limitations, and exclusions set forth therein and denies the allegations in paragraph 27 of the Petition to the extent that they are inconsistent with those terms, conditions, limitations, and exclusions.  Liberty Mutual denies any remaining allegations in paragraph 27 of the Petition.

28.    The Business Income (and Extra Expense) Coverage Form defines Business Income as:

> a.    Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and
> b.    Continuing normal operating expenses incurred, including payroll.

**ANSWER:**    Liberty Mutual admits that the Policy contains the language quoted in paragraph 28 of the Petition.  Answering further, Liberty Mutual states that the Policy is subject to all of the terms, conditions, limitations, and exclusions set forth therein.  Liberty

Mutual denies the allegations of paragraph 28 to the extent that they are inconsistent with the terms, conditions, limitations, and exclusions in the Policy.

29.    The Business Income (and Extra Expense) Coverage Form defines Extra Expense as:

> Necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.
> We will pay Extra Expense (other than the expense to repair or replace property to:
>> (1)    Avoid or minimize the "suspension" of business and to continue operations at the described premises or at the described premises or at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location.
>> (2)    Minimize the "suspension" of business if you cannot continue "operations."
> We will also pay Extra Expense to repair or replace property, but only to the extent it reduces the amount of loss that otherwise would have been payable under this Coverage Form.

**ANSWER:**    Liberty Mutual denies that the Policy contains language as quoted in paragraph 29 of the Petition.  Answering further, Liberty Mutual states that the Policy is subject to all of the terms, conditions, limitations, and exclusions set forth therein and denies the allegations in paragraph 29 of the Petition to the extent that they are inconsistent with those terms, conditions, limitations, and exclusions.  Liberty Mutual denies any remaining allegations in paragraph 29 of the Petition.

30.    Plaintiff has suffered a direct physical loss of and damage to its property because they have been unable to use its property for its intended purpose.

**ANSWER:**   Liberty Mutual denies the allegations contained in paragraph 30 of the Petition.

31.     On or about April 14, 2020, Plaintiff was advised its claim with Liberty Mutual for Business Interruption Insurance was denied because Plaintiff had allegedly not suffered direct physical loss or damage for purposes of that coverage and that no surrounding property had suffered direct physical loss or damages or for purposes of the Civil Authority Coverage.

**ANSWER:**   Liberty Mutual admits that a letter denying Plaintiff's claim under the Policy with respect to COVID-19 was sent to Plaintiff on or about April 14, 2020. Answering further, Liberty Mutual states that this denial letter speaks for itself and denies any allegations to the extent that they are inconsistent with this letter.  Liberty Mutual denies any remaining allegations in paragraph 31 of the Petition.

32.     Defendant Liberty Mutual's denial was wrongful because Plaintiff had suffered direct physical loss or damage within the definition of the policy.

**ANSWER:**   Liberty Mutual denies the allegations contained in paragraph 32 of the Petition.

33.     As the drafter of the policy, if Defendant Liberty Mutual had wished to exclude from coverage as "physical loss or damage" loss of use of property that has not been physically altered, it could have used explicit language stating such definition of "physical loss or damage". It did not do so.

**ANSWER:**   Liberty Mutual denies the allegations contained in paragraph 33 of the Petition.

14

*Clerk of the District Court, Johnson County Kansas*
*09/08/20  10:36am VV*

37126262.3

034

34.     Any virus and bacteria endorsement does not apply because Plaintiffs losses were not caused by a "virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease". Rather, the proximate cause of Plaintiffs losses were cautionary measures taken by the State of Colorado and other government authorities to prevent the spread of COVID-19 in the future, not because Corona virus was found in or on Plaintiffs insured property.

**ANSWER:**   Liberty Mutual denies the allegations contained in paragraph 34 of the Petition.

### The Colorado Closure Orders

35.     On March 11, 2020, Colorado Governor Jared Polis issued Executive Order D 2020 003 which declared a Disaster Emergency due to the Covid-19 outbreak.

**ANSWER:**   Liberty Mutual admits that Plaintiff purports to describe an executive order issued by the Governor of Colorado, states that such order is not attached to or quoted in its entirety in the Petition and speaks for itself, and denies any allegations that are inconsistent with this order.  As to the remaining allegations in paragraph 35, Liberty Mutual is without knowledge or information sufficient to form a belief as to the truth of the allegations and, accordingly, denies the same.

36.     On March 22, 2020, Colorado Governor Jared Polis issued Executive Order D 2020 013 which ordered employers to reduce the in-person workforce by fifty percent.

**ANSWER:**   Liberty Mutual admits that Plaintiff purports to describe an executive order issued by the Governor of Colorado, states that such order is not attached to or quoted in its entirety in the Petition and speaks for itself, and denies any allegations that are

37126262.3

*Clerk of the District Court, Johnson County Kansas*
*09/08/20  10:36am VV*

inconsistent with this order.  As to the remaining allegations in paragraph 36, Liberty Mutual is without knowledge or information sufficient to form a belief as to the truth of the allegations and, accordingly, denies the same.

37.     On March 25, 2020, Colorado Governor Jared Polis issued Executive Order D 2020 017 which ordered Coloradans to stay home and directed businesses to close. On April 6, 2020, Governor Jared Polis issued Executive Order D 2020 024, which extended Executive Order D 2020 017 to April 26, 2020.

**ANSWER:**     Liberty Mutual admits that Plaintiff purports to describe an executive order issued by the Governor of Colorado, states that such order is not attached to or quoted in its entirety in the Petition and speaks for itself, and denies any allegations that are inconsistent with this order.  As to the remaining allegations in paragraph 37, Liberty Mutual is without knowledge or information sufficient to form a belief as to the truth of the allegations and, accordingly, denies the same.

## COUNT I- DECLARATORY JUDGMENT-BUSINESS INCOME COVERAGE

38.     Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 37 as if fully set forth herein.

**ANSWER:**     Liberty Mutual repeats and incorporates by reference its responses to the allegations contained in paragraphs 1 through 37 of the Petition as if each were set forth individually and incorporated fully herein.

39.     Policies or contracts under which Liberty Mutual was paid premium in exchange for its promise to pay Plaintiffs losses for claims covered by the policies.

*Clerk of the District Court, Johnson County Kansas*
*09/08/20  10:36am VV*

**ANSWER:**   Answering paragraph 39 of the Petition, Liberty Mutual states that Plaintiff paid a premium for the Policy and the Policy provides certain coverage subject to its terms, conditions, limitations, and exclusions.  The remaining allegations of paragraph 39 of the Petition are incomprehensible and accordingly, Liberty Mutual denies the same.

40.   Plaintiff has complied with all applicable provisions of the policies and/or those provisions have been waived by Liberty Mutual or Liberty Mutual is estopped from asserting them, and yet Liberty Mutual has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms and have wrongfully and illegally refused to provide coverage for which Plaintiff is entitled.

**ANSWER:**   Liberty Mutual denies the allegations contained in paragraph 40 of the Petition.

41.   Liberty Mutual has denied claims related to COVID-19 on a uniform basis, without individual basis's or investigations, so the Court can render a Declaratory Judgment.

**ANSWER:**   Liberty Mutual denies the allegations contained in paragraph 41 of the Petition.

42.   Pursuant to KSA 60-1701, *et seq.,* an actual case or controversy exists regarding Plaintiffs rights and Liberty Mutual's obligations under the policies to reimburse Plaintiff for the full amount of Business Income Losses incurred by Plaintiff in connection with the suspension of its businesses stemming from orders intended to mitigate the COVID-19 pandemic.

**ANSWER:**   The allegations in paragraph 42 of the Petition state legal conclusions to which no response is required.  To the extent a response is deemed necessary, Liberty Mutual denies the allegations in paragraph 42.

43.     Pursuant to KSA 60-1701 *et seq.*, Plaintiff seeks a Declaratory Judgment from this Court declaring the following:

1.     Plaintiffs Business Income Losses incurred in connection with the Closure Order and the necessary interruption of its business stemming from orders intended to mitigate the COVID-19 pandemic are insured losses under its policy; and

2.     Liberty Mutual is obligated to pay Plaintiff for the full amount of Business Income Losses related to the Closure Order during the period of restoration and the necessary interruption of its businesses stemming from the orders intended to mitigate the COVID-19 pandemic.

**ANSWER:**   Liberty Mutual admits that Plaintiff seeks declaratory judgment as described in paragraph 43 of the Petition and denies that the Plaintiff is entitled to the declaratory judgment requested.

**COUNT II - BREACH OF CONTRACT-BUSINESS INCOME COVERAGE**

44.     Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 43 as if fully set forth herein.

*Clerk of the District Court, Johnson County Kansas*
*09/08/20  10:36am VV*

**ANSWER:**  Liberty Mutual repeats and incorporates by reference its responses to the allegations contained in paragraphs 1 through 43 of the Petition as if each were set forth individually and incorporated fully herein.

45.  The Policies issued by Liberty Mutual are contracts whereby Liberty Mutual was paid premium in exchange for its promise to pay Plaintiffs losses for claims covered by the Policies.

**ANSWER:**  Answering paragraph 45 of the Petition, Liberty Mutual states that Plaintiff paid a premium for the Policy and the Policy provides certain coverage subject to its terms, conditions, limitations, and exclusions.  Liberty Mutual denies the remaining allegations in paragraph 45 of the Petition.

46.  In the Business Income (and Extra Expense) Coverage Form, Liberty Mutual agreed to pay for its insureds' actual loss of Business Income sustained due to the necessary suspension of its operations during the "period of restoration."

**ANSWER:**  Liberty Mutual states that the Policy is subject to all of the terms, conditions, limitations, and exclusions set forth therein and denies the allegations in paragraph 46 of the Petition to the extent that they are inconsistent with those terms, conditions, limitations, and exclusions.  Liberty Mutual denies the remaining allegations in paragraph 46 of the Petition.

47.  In the Business Income ( and Extra Expense) Coverage Form, Liberty Mutual agreed to pay for its insureds' actual loss of Business Income sustained due to the necessary "suspension" of its operations during the "period of restoration" caused by direct physical loss or damage. "Business Income" under the Policy means the "net

37126262.3

*Clerk of the District Court, Johnson County Kansas*
*09/08/20  10:36am VV*

income (net profit or loss before income taxes) that would have been earned or incurred if no physical loss or damage had occurred", as well as "[ c ]ontinuing the normal operating expenses incurred, including payroll".

**ANSWER:**   Liberty Mutual states that the Policy is subject to all of the terms, conditions, limitations, and exclusions set forth therein and denies the allegations in paragraph 47 of the Petition to the extent that they are inconsistent with those terms, conditions, limitations, and exclusions.   Liberty Mutual denies the remaining allegations in paragraph 47 of the Petition.

48.    The Closure Orders referred to above (the "Closure Orders") caused direct physical loss and damage to Plaintiff requiring suspension of operations. Losses caused by these Orders thus triggered the Business Income provision of Plaintiffs Policies.

**ANSWER:**   Liberty Mutual denies the allegations in paragraph 48 of the Petition.

49.    Plaintiff has complied with all applicable provisions of the Policy and/or those provisions have been waived by Liberty Mutual or Liberty Mutual is now estopped from asserting them and yet Liberty Mutual has abrogated its insurance coverage obligations pursuant to the Policies' clear and unambiguous terms.

**ANSWER:**   Liberty Mutual denies the allegations in paragraph 49 of the Petition.

50.    By denying coverage for any Business Income Losses incurred by Plaintiff as a result of the Orders, Liberty Mutual has breached its coverage obligations under the Policies.

**ANSWER:**   Liberty Mutual denies the allegations in paragraph 50 of the Petition.

37126262.3

*Clerk of the District Court, Johnson County Kansas*
*09/08/20  10:36am VV*

51.     Because of Liberty Mutual's breaches of the Policies, Plaintiff has sustained substantial damages for which Liberty Mutual is liable, in an amount to be established at trial.

**ANSWER:**   Liberty Mutual denies the allegations in paragraph 51 of the Petition.

## COUNT III-ANTICIPATORY BREACH OF CONTRACT

52.     Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 51 as if fully set forth herein.

**ANSWER:**   Liberty Mutual repeats and incorporates by reference its responses to the allegations contained in paragraphs 1 through 51 of the Petition as if each were set forth individually and incorporated fully herein.

53.     The Policy is a contract under which Liberty Mutual was paid premium in exchange for its promise to pay Plaintiffs losses for claims covered by the Policy.

**ANSWER:**   Liberty Mutual states that Plaintiff paid a premium for the Policy and the Policy provides certain coverage subject to its terms, conditions, limitations, and exclusions.   Liberty Mutual denies the remaining allegations in paragraph 53 of the Petition.

54.     In the Business Income (and Extra Expense) Coverage Form, Liberty Mutual agreed to pay for its insureds' actual loss of Business Income sustained due to the necessary suspension of its operations during the "period of restoration."

**ANSWER:**   Liberty Mutual states that the Policy is subject to all of the terms, conditions, limitations, and exclusions set forth therein and denies the allegations in paragraph 54 of the Petition to the extent that they are inconsistent with those terms, conditions,

*Clerk of the District Court, Johnson County Kansas*
*09/08/20  10:36am VV*

limitations, and exclusions.   Liberty Mutual denies the remaining allegations in paragraph 54 of the Petition.

55.    In the Business Income (and Extra Expense) Coverage Form, Liberty Mutual agreed to pay for its insureds' actual loss of business Income stained due to the necessary "suspension" its "operations" during the "period of restoration" caused by the direct physical or damage. A "partial slow down or complete cessation" of business activities of the covered property is a "suspension" under the Policy for which Liberty Mutual agreed to pay for loss of Business Income during the "period of restoration" "that occurs within 24 consecutive months after the date of direct physical loss or damage."

**ANSWER:**    Liberty Mutual states that the Policy is subject to all of the terms, conditions, limitations, and exclusions set forth therein and denies the allegations in paragraph 55 of the Petition to the extent that they are inconsistent with those terms, conditions, limitations, and exclusions.   Liberty Mutual denies the remaining allegations in paragraph 55 of the Petition.

56.    "Business Income" under the policy means "net income (net profit or loss before income taxes) that would have been earned or incurred if no physical loss or damage had occurred", as well as "[ c ]ontinuing the normal operating expenses incurred, including payroll".

**ANSWER:**    Liberty Mutual states that the Policy is subject to all of the terms, conditions, limitations, and exclusions set forth therein and denies the allegations in paragraph 56 of the Petition to the extent that they are inconsistent with those terms, conditions,

limitations, and exclusions.  Liberty Mutual admits that paragraph 56 of the Petition quotes in part a portion of the Policy.

57.     The Closure Orders caused direct physical loss and damage to Plaintiffs covered properties, requiring suspension of operations at the covered properties. Losses caused by the Closure Order thus triggered the Business Income provisions of the Policies.

**ANSWER:**    Liberty Mutual denies the allegations in paragraph 57 of the Petition.

58.     Notwithstanding the foregoing, Liberty Mutual will pay Business Interruption Claims only if the subject property is physically altered.

**ANSWER:**    Liberty Mutual states that each policy issued by Liberty Mutual is subject to its own terms, conditions, limitations, and exclusions and Liberty Mutual makes coverage determinations based on the facts of the claim and the terms of the applicable policy.  Liberty Mutual denies the remaining allegations in paragraph 58 of the Petition.

59.     As a result, Liberty Mutual has anticipatorily breached the policies of Plaintiff who has suffered physical loss or damage to the property because the use of the property has been substantially impaired and, thus, would be entitled to coverage under their Policies under applicable law, but for Liberty Mutual's anticipatory breach of contract.

**ANSWER:**    Liberty Mutual denies the allegations in paragraph 59 of the Petition.

60.     Plaintiff has complied with all applicable provisions of its Policy and/or Liberty Mutual has waived those provisions or Liberty Mutual is estopped from asserting

them, and yet Liberty Mutual has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms.

**ANSWER:**   Liberty Mutual denies the allegations in paragraph 60 of the Petition.

61.   Because of Liberty Mutual's breaches of the policies, Plaintiff has sustained substantial damages for which Liberty Mutual is liable in an amount to be established at trial.

**ANSWER:**   Liberty Mutual denies the allegations in paragraph 61 of the Petition.

**COUNT IV - DECLARATORY JUDGMENT-CIVIL AUTHORITY COVERAGE**

62.   Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 61 as if fully set forth herein.

**ANSWER:**   Liberty Mutual repeats and incorporates by reference its responses to the allegations contained in paragraphs 1 through 61 of the Petition as if each were set forth individually and incorporated fully herein.

63.   The Policy is a contract under which Liberty Mutual was paid premium in exchange for its promise to pay Plaintiffs losses for claims covered by the Policy.

**ANSWER:**   Liberty Mutual states that Plaintiff paid a premium for the Policy and the Policy provides certain coverage subject to its terms, conditions, limitations, and exclusions.   Liberty Mutual denies the remaining allegations in paragraph 63 of the Petition.

64.   Plaintiff has complied with all applicable provisions of its Policy and/or Liberty Mutual has waived those provisions or Liberty Mutual is estopped from asserting them, and yet Liberty Mutual has abrogated its insurance coverage obligations pursuant

*Clerk of the District Court, Johnson County Kansas*
*09/08/20  10:36am VV*

to the policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage for which Plaintiff is entitled.

**ANSWER:**   Liberty Mutual denies the allegations in paragraph 64 of the Petition.

65.   Liberty Mutual has denied claims related to COVID-19.

**ANSWER:**   Liberty Mutual admits the allegation in paragraph 65 of the Petition.

66.   An actual case or controversy exists regarding Liberty Mutual's obligations under the Policy to reimburse Plaintiff for the full amount of coverage Civil Authority Losses incurred by Plaintiff in connection with Closure Orders and the necessary interruption of its businesses stemming from the Orders intended to mitigate the COVID-19 Pandemic.

**ANSWER:**   Liberty Mutual denies the allegations in paragraph 66 of the Petition.

67.   Pursuant to KSA 60-1701 *et seq.,* Plaintiff seeks Declaratory Judgment from this Court declaring the following:

1.   Plaintiffs Civil Authority Losses incurred in connection with the Closure Orders and the necessary interruption of its businesses stemming from the COVID-19 Pandemic are insured losses under the Policy; and

2.   Liberty Mutual is obligated to pay Plaintiff the full amount of the Civil Authority Losses incurred and to be incurred in connection with the covered losses related to the Closure Orders and the necessary interruption of its businesses stemming from the Orders intended to mitigate the COVID-19 Pandemic.

37126262.3

*Clerk of the District Court, Johnson County Kansas*
*09/08/20  10:36am VV*

**ANSWER:**   Liberty Mutual admits that Plaintiff seeks declaratory judgment as described in paragraph 67 of the Petition and denies that the Plaintiff is entitled to the declaratory judgment requested.

## COUNT V - BREACH OF CONTRACT-CIVIL AUTHORITY COVERAGE

68.   Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 67 as if fully set forth herein.

**ANSWER:**   Liberty Mutual repeats and incorporates by reference its responses to the allegations contained in paragraphs 1 through 67 of the Petition as if each were set forth individually and incorporated fully herein.

69.   The Policy is a contract under which Liberty Mutual was paid premium in exchange for its promise to pay Plaintiffs losses for claims covered by the Policy.

**ANSWER:**   Liberty Mutual states that Plaintiff paid a premium for the Policy and the Policy provides certain coverage subject to its terms, conditions, limitations, and exclusions.   Liberty Mutual denies the remaining allegations in paragraph 69 of the Petition.

70.   Liberty Mutual Business Income (and Extra Expense) Coverage Form provides "Civil Authority" coverage, which promises to pay "the actual loss of Business Income you sustain and necessary Extra Expense caused by action of Civil Authority that prohibits access to the described premises, provided that both of the following apply:

> (1)   Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage and the described premises are within that area but are not more than one mile from the damaged property; and

37126262.3

*Clerk of the District Court, Johnson County Kansas*
*09/08/20  10:36am VV*

(2) The action of civil authority is taken in response to dangerous physical conditions resulting from a damage or continuation of the covered cause of loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property."

**ANSWER:**   Liberty Mutual denies that the Policy contains language as quoted in paragraph 70 of the Petition.  Answering further, Liberty Mutual states that the Policy is subject to all of the terms, conditions, limitations, and exclusions set forth therein and denies the allegations in paragraph 70 of the Petition to the extent that they are inconsistent with those terms, conditions, limitations, and exclusions.  Liberty Mutual denies any remaining allegations in paragraph 70 of the Petition.

71.   The Closure Orders triggered the Civil Authority provision under the Policy.

**ANSWER:**   Liberty Mutual denies the allegations in paragraph 71 of the Petition.

72.   Plaintiff has complied with all applicable provisions of its Policy and/or Liberty Mutual has waived those provisions or Liberty Mutual is estopped from asserting them, and yet Liberty Mutual has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage for which Plaintiff is entitled.

**ANSWER:**   Liberty Mutual denies the allegations in paragraph 72 of the Petition.

73.   By denying coverage for any Business Losses incurred by Plaintiff in connection with the Closure Orders and Orders intended to mitigate the COVID-19 Pandemic, Liberty Mutual has breached its coverage obligation under the Policy.

37126262.3

*Clerk of the District Court, Johnson County Kansas*
*09/08/20  10:36am VV*

**ANSWER:**   Liberty Mutual denies the allegations in paragraph 73 of the Petition.

74.   Because of Liberty Mutual's breaches under the Policy, Plaintiff has sustained substantial damages for which Liberty Mutual is liable, in an amount to be established at Trial.

**ANSWER:**   Liberty Mutual denies the allegations in paragraph 74 of the Petition.

## COUNT VI- DECLARATORY JUDGMENT-EXTRA EXPENSE COVERAGE

75.   Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 74 as if fully set forth herein.

**ANSWER:**   Liberty Mutual repeats and incorporates by reference its responses to the allegations contained in paragraphs 1 through 74 of the Petition as if each were set forth individually and incorporated fully herein.

76.   The Policy is a contract under which Liberty Mutual was paid premium in exchange for its promise to pay Plaintiffs losses for claims covered by the Policy.

**ANSWER:**   Liberty Mutual states that Plaintiff paid a premium for the Policy and the Policy provides certain coverage subject to its terms, conditions, limitations, and exclusions.   Liberty Mutual denies the remaining allegations in paragraph 76 of the Petition.

77.   Plaintiff has complied with all applicable provisions of its Policy and/or Liberty Mutual has waived those provisions or Liberty Mutual is estopped from asserting them, and yet Liberty Mutual has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiff is entitled.

*Clerk of the District Court, Johnson County Kansas*
*09/08/20  10:36am VV*

**ANSWER:**   Liberty Mutual denies the allegations in paragraph 77 of the Petition.

78.   Liberty Mutual has denied claims related to COVID-19.

**ANSWER:**   Liberty Mutual admits the allegation in paragraph 78 of the Petition.

79.   An actual case or controversy exists regarding Liberty Mutual's obligation under the Policy to reimburse Plaintiff for the full amount of Extra Expense Losses incurred by Plaintiff in connection with Closure Orders and the necessary interruption of its businesses stemming from Orders intended to mitigate the COVID-19 Pandemic.

**ANSWER:**   Liberty Mutual denies the allegations in paragraph 79 of the Petition.

80.   Pursuant to KSA 60-1701 *et seq.,* Plaintiff seeks Declaratory Judgment from this Court declaring the following:

1.   Plaintiffs Business Income Losses incurred in connection with the Closure Order and the necessary interruption of its business stemming from orders intended to mitigate the COVID-19 pandemic are insured losses under its policy; and

2.   Liberty Mutual is obligated to pay Plaintiff for the full amount of Extra Expenses Losses incurred and to be incurred in connection with the Covered Losses related to the Closure Order during the period of restoration and the necessary interruption of its businesses stemming from the orders intended to mitigate the COVID-19 pandemic.

37126262.3

*Clerk of the District Court, Johnson County Kansas*
*09/08/20  10:36am VV*

**ANSWER:**   Liberty Mutual admits that Plaintiff seeks declaratory judgment as described in paragraph 80 of the Petition and denies that the Plaintiff is entitled to the declaratory judgment requested.

### COUNT VII - BREACH OF CONTRACT-EXTRA EXPENSE COVERAGE

81.     Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 80 as if fully set forth herein.

**ANSWER:**   Liberty Mutual repeats and incorporates by reference its responses to the allegations contained in paragraphs 1 through 80 of the Petition as if each were set forth individually and incorporated fully herein.

82.     The Policy is a contract under which Liberty Mutual was paid premium in exchange for its promise to pay Plaintiffs losses for claims covered by the Policy.

**ANSWER:**   Liberty Mutual states that Plaintiff paid a premium for the Policy and the Policy provides certain coverage subject to its terms, conditions, limitations, and exclusions.   Liberty Mutual denies the remaining allegations in paragraph 82 of the Petition.

83.     In the Business Income (and Extra Expense) Coverage Form, Liberty Mutual also agreed to pay necessary Extra Expenses that its insureds incur during the "period of restoration" that the insureds would not have incurred if there had been no direct physical loss or damage to the described premises. "Extra Expense" means expenses "to avoid or minimize the "suspension" of business and to continue operations" and to repair or replace property.

**ANSWER:**   Liberty Mutual states that the Policy is subject to all of the terms, conditions, limitations, and exclusions set forth therein and denies the allegations in paragraph 83 of the Petition to the extent that they are inconsistent with those terms, conditions, limitations, and exclusions.  Liberty Mutual admits that paragraph 83 of the Petition quotes in part a portion of the Policy.

84.   Due to the Closure Orders, Plaintiff incurred Extra Expense of covered property.

**ANSWER:**   Liberty Mutual is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 84 of the Petition and, accordingly, denies the same.

85.   Plaintiff has complied with all applicable provisions of its Policy and/or Liberty Mutual has waived those provisions or Liberty Mutual is estopped from asserting them, and yet Liberty Mutual has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms.

**ANSWER:**   Liberty Mutual denies the allegations in paragraph 85 of the Petition.

86.   By denying coverage for any Business Losses incurred by Plaintiff in connection with the Closure Orders and Orders intended to mitigate the COVID-19 Pandemic, Liberty Mutual has breached its coverage obligation under the Policies.

**ANSWER:**   Liberty Mutual denies the allegations in paragraph 86 of the Petition.

87.   Because of Liberty Mutual's breaches of the Policies, Plaintiff has sustained substantial damages for which Liberty Mutual is liable in an amount to be established at trial.

*Clerk of the District Court, Johnson County Kansas*
*09/08/20  10:36am VV*

**ANSWER:**     Liberty Mutual denies the allegations in paragraph 87 of the Petition.

## AFFIRMATIVE DEFENSES

Liberty Mutual, by way of further answer and defense, alleges and states as follows without assuming any burden of proof or persuasion that it does not have under applicable law:

## FIRST AFFIRMATIVE DEFENSE

The Petition fails to state a clam upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

The Policy states, in Section I - Property:

**A. Coverage**

> We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

(Policy, Form CP 00 10 10 12, page 1 of 17).

There was no direct physical loss of or damage to Covered Property at the premises, and, therefore, there is no coverage under the Policy.

## THIRD AFFIRMATIVE DEFENSE

The Policy defines Covered Cause of Loss as "direct physical loss unless the loss is excluded or limited in this policy."  The Policy contains the following endorsement titled **Exclusion of Loss Due to Virus or Bacteria**:

> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL PROPERTYCOVEAGE PART
>
> STANDARD PROPERTY POLICY
>
> A. The exclusion set forth in Paragraph B. applies to all coverage under all forms and endorsements that comprise this Coverage Part or Policy, including but not limited to forms or

*Clerk of the District Court, Johnson County Kansas*
*09/08/20  10:36am VV*

    endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority.

B. We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

    However, this exclusion does not apply to loss or damage caused by or resulting from "fungus", wet rot or dry rot. Such loss or damage is addressed in a separate exclusion in this Coverage Part or Policy.

C. With respect to any loss or damage subject to the exclusion in Paragraph B., such exclusion supersedes any exclusion relating to "pollutants".

D. The following provisions in this Coverage Part or Policy are hereby amended to remove reference to bacteria:

    1. Exclusion of "Fungus", Wet Rot, Dry Rot And Bacteria; and

    2. Additional Coverage - Limited Coverage for "Fungus", Wet Rot, Dry Rot And Bacteria, including any endorsement increasing the scope or amount of coverage.

E. The terms of the exclusion in Paragraph B., or the inapplicability of this exclusion to a particular loss, do not serve to create coverage for any loss that would otherwise be excluded under this Coverage Part or Policy.

(Policy, Form CP 01 40 07 06, page 1 of 1.)

    Even if there were direct physical loss or of damage to Covered Property at the premises, there is no coverage under the Policy because of the application of the Virus or Bacteria exclusion.

## FOURTH AFFIRMATIVE DEFENSE

    The Policy defines Covered Cause of Loss as "Direct physical loss unless the loss is excluded or limited under Section I – Property." The Policy contains the following Exclusion:

B. **Exclusions**

***

1.  We will not pay for loss or damage caused by or resulting from any of the following.

    ***

    l.  Discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

    This exclusion, l., does not apply to damage to glass caused by chemicals applied to the glass.

(Policy, Form CP 10 30 10 12, page 5 of 11.)

Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed.

(Form CP 00 30 10 12, page 9 of 10.)

Even if there were direct physical loss or of damage to Covered Property at the premises, there is no coverage under the Policy because of the application of the Pollution exclusion.

**FIFTH AFFIRMATIVE DEFENSE**

The Policy defines Covered Cause of Loss as "Direct physical loss unless the loss is excluded or limited under Section I – Property."  The Policy contains the following Exclusion:

*Clerk of the District Court, Johnson County Kansas*
*09/08/20  10:36am VV*

**B. Exclusions**

\*\*\*

2.  We will not pay for loss or damage caused by or resulting from any of the following.

\*\*\*

b.  Delay, loss of use or loss of market.

(Policy, Form CP 10 30 10 12, pages 1 & 3 of 11.)

Even if there were direct physical loss or of damage to Covered Property at the premises, there is no coverage under the Policy because of the application of the loss of use exclusion.

## SIXTH AFFIRMATIVE DEFENSE

The Policy defines Covered Cause of Loss as "Direct physical loss unless the loss is excluded or limited under Section I – Property."  The Policy contains the following Exclusion:

**B. Exclusions**

\*\*\*

3.  We will not pay for loss or damage caused by or resulting from any of the following **3.a.** through **3.c**. But if an excluded cause of loss that is listed in **3.a.** through **3.c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

\*\*\*

b.      Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

(Policy, Form CP 10 30 10 12, page 5 of 11.)

37126262.3

*Clerk of the District Court, Johnson County Kansas*
*09/08/20  10:36am VV*

Even if there were direct physical loss or of damage to Covered Property at the premises, there is no coverage under the Policy because of the application of the Acts or Decisions exclusion.

<u>**SEVENTH AFFIRMATIVE DEFENSE**</u>

The Policy states:

### A.  Coverage

#### 1.  Business Income

\*\*\*

We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration".  The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit Of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss.

\*\*\*

#### 2.  Extra Expense

\*\*\*

    **b.**  Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.

(Policy, Form CP 00 30 10 12, page 1 of 10.)

There is no coverage for Business Income and Extra Expense under the Policy. There was no direct physical loss of or damage to the property at the described premises and no suspension of operations.  Even if there was loss or damage, it was not caused by

37126262.3

*Clerk of the District Court, Johnson County Kansas*
*09/08/20  10:36am VV*

or did not result from a Covered Cause of Loss in light of the application of the exclusions in the Policy that are set forth in these Affirmative Defenses.

**EIGHTH AFFIRMATIVE DEFENSE**

The Policy states:

   **a. Civil Authority**

   \*\*\*

   When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

   (1)   Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damage property; and

   (2)   The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

   Civil Authority Coverage for Business Income will begin 72 hours after the time of the first action of civil authority that prohibits access to the described premises and will apply for a period of up to four consecutive weeks from the date on which such coverage began.

   Civil Authority Coverage for necessary Extra Expense will begin immediately after the time of the first action of civil authority that prohibits access to the described premises and will end:

   (1)   Four consecutive weeks after the date of that action; or

37126262.3

> (2)   When your Civil Authority Coverage for Business Income
>        ends;

whichever is later.

(Policy, Form CP 00 30 10 12, page 2 of 10.)

There is no coverage for Civil Authority under the Policy.  There was no damage to property within one mile from the described premises and, even if there was, any purported damage to property was not caused by a Covered Cause of Loss.  The Governor's Executive Orders did not prohibit access to the described premises or the area immediately surrounding any damaged property.  The Governor's Executive Orders were not taken in response to dangerous physical conditions resulting from any damage or continuation of the Covered Cause of Loss that caused any damage to property within one mile from the described premises and were not taken to enable a civil authority to have unimpeded access to any damaged property within one mile from the described premises.  The Governor's Executive Orders were taken to preserve public health and safety, to ensure that the healthcare delivery system is capable of serving those who are sick and to slow and stop the spread of the coronavirus and Covid-19.

## NINTH AFFIRMATIVE DEFENSE

Plaintiff's claim and alleged loss or damage are subject to, and limited by, limits, sublimits and deductibles under the Policy.

37126262.3

*Clerk of the District Court, Johnson County Kansas*
*09/08/20  10:36am VV*

**TENTH AFFIRMATIVE DEFENSE**

Liberty Mutual's obligation to Plaintiff, if any, is subject to offset for recoveries by Plaintiff from other persons or entities, including any governmental entities, for Plaintiff's losses or damages.

**ELEVENTH AFFIRMATIVE DEFENSES**

Plaintiff is not entitled to recover its attorney's fees under its breach of contract cause of action or any other possible cause of action.

**TWELFTH AFFIRMATIVE DEFENSE**

Liberty Mutual reserves the right to offer and rely on any other terms, conditions, limitations, requirements, deductibles, and exclusions contained in the Policy.  In the event that facts become known through discovery in this action that may support the assertion of additional affirmative defenses or that may cause other terms, conditions, limitations, requirements, deductibles, and/or exclusions contained in the Policy to apply to Plaintiff's claims, Liberty Mutual reserves the right to seek leave from this Court to amend its affirmative defenses accordingly.

WHEREFORE, Liberty Mutual Insurance Company prays that Plaintiff takes nothing by way of its Petition, that this Court dismiss Plaintiff's Petition with prejudice, enter judgment in favor of Liberty Mutual Insurance Company, and grant such other relief as the Court shall deem just and equitable.

37126262.3

*Clerk of the District Court, Johnson County Kansas*
*09/08/20  10:36am VV*

SEYFERTH BLUMENTHAL & HARRIS LLC


/s/ Bruce A. Moothart
Bruce A. Moothart, #17263
4801 Main Street, Suite 310
Kansas City, Missouri 64112
Telephone:  816-756-0700
bruce@sbhlaw.com

Attorneys for Defendant
Liberty Mutual Insurance Company

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 8th day of September, 2020, the above document was served via the court's efiling system to all counsel:

Kurt S. Brack, Esq.
Brown & Ruprecht PC
2323 Grand Blvd., Suite 1100
Kansas City, MO 64108


/s/ Bruce A. Moothart
Attorneys for Defendant Liberty Mutual
Insurance Company

37126262.3

*Clerk of the District Court, Johnson County Kansas*
*09/08/20  10:36am VV*

20CV02929
Div4

## IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS
## CIVIL COURT DEPARTMENT

| | | |
|---|---|---|
| MNR LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 20CV02929 |
| | ) | Division: 4 |
| LIBERTY MUTUAL INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| OHIO SECURITY INSURANCE | ) | |
| COMPANY, | ) | |
| Serve: Commissioner of Insurance | ) | |
| Kansas Insurance Department | ) | |
| 420 SW 9th Street | ) | |
| Topeka, KS 66612, | ) | |
| | ) | |
| Defendants. | ) | |

## FIRST AMENDED PETITION

COMES NOW Plaintiff, MNR LLC d/b/a Hampton Inn, by and through its counsel of record, and for its First Amended Petition against Defendants Liberty Mutual Insurance Company ("Liberty Mutual") and Ohio Security Insurance Company ("Ohio Security") states as follows:

1.      Plaintiff brings this action against Defendants due to Defendants' failure to provide insurance coverage for the losses sustained and expenses incurred to Plaintiff because of the ongoing Coronavirus (COVID-19) pandemic.

2.      For several years Plaintiff has operated two hotels; one in Littleton, Colorado and one in Longmont, Colorado. Plaintiff's operations have been and continue to be suspended and threatened by the Novel Coronavirus, which causes the infectious disease COVID-19 ("COVID-19").

*Clerk of the District Court, Johnson County Kansas*
*09/09/20  05:11pm NG*

061

3.      On March 11, 2020 the World Health Organization declared the COVID-19 outbreak a worldwide pandemic: "WHO has been assessing this outbreak around the clock and we are deeply concerned by both the alarming levels of spread and severity, and by the alarming levels of inaction. We have therefore made the assessment that COVID-19 can be characterized as a pandemic." [1]

4.      On March 16, 2020 the Centers for Disease Control and Prevention and members of the National Coronavirus Task Force issued to the American Public guidance styled as "Thirty Days to Slow the Spread" for stopping the spread of COVID-19. This guidance advised individuals to adopt far-reaching social distancing measures, such as working from home, avoiding shopping trips and gatherings of more than 10 people, and staying away from bars, restaurants, gyms and food courts. [2]

5.      Following this advice, many state governments, including Colorado, took measures in the form of emergency orders to protect the health and safety of their residents from the human-to-human and surface-to-human spread of COVID-19.

6.      As a result, many governmental entities, including Colorado, entered Civil Authority Orders suspending or severely limiting business operations of "non-essential businesses" that interact with the public and provide gathering places for the individuals.

7.      Over forty (40) states within the United States issued some type of "stay-at-home" emergency order closing private non-essential business operations.

---

[1] See https://www.who.int/dg/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19 11-March-2020
[2] https://www.whitehouse.gov/wp-content/uploads-2020/03/03.16.20coronavirus.guidance 8.5x11 315pm.pdf

*Clerk of the District Court, Johnson County Kansas*
*09/09/20  05:11pm NG*

8.      The result of these closures has been catastrophic for most of the non-essential businesses, especially retail establishments that were forced to close, furlough employees, and endure a sudden shut-down of cash flow that threatens their survival.

9.      Many businesses pay significant premiums to insure against such catastrophic events like the government-issued orders mandating suspension of business activities through all-risk commercial property insurance policies.

10.      These policies promise to indemnify the policy holder for actual business losses incurred when business operations are involuntarily suspended, interrupted, curtailed, when public access is prohibited because of direct physical loss or damage to the property, or by civil authority order that restricts or prohibits access to the property. This coverage, generally known as "business interruption coverage," is standard in most all-risk commercial property insurance policies.

11.      Defendants are denying their obligation to pay for business income losses and other covered expenses incurred by Plaintiff for the physical loss and damage to the insured property from measures put in place by the civil authorities to stop the spread of COVID-19 among the population.

12.      Plaintiff, through this action, seeks a declaratory judgment that affirms that the orders issued by civil authorities to stop the spread of the COVID-19 outbreak triggers coverage, has caused physical property loss and damage to the insured property, provides coverage for future civil authority orders that result in future suspensions or curtailments of business operations and finds that Defendants are liable for the losses suffered  by Plaintiff.

13.      In addition, this action brings claims against Defendants for their breaches of their contractual obligation under common all-risk commercial property insurance policies to indemnify Plaintiff and others similarly situated for business losses and extra expenses, and related losses

*Clerk of the District Court, Johnson County Kansas*
*09/09/20  05:11pm NG*

resulting from actions taken by civil authorities to stop the human-to-human and surface-to-human spread of the COVID-19 outbreak.

## Jurisdiction and Venue

14.     This Court has jurisdiction over this matter in that Plaintiff is a Kansas limited liability company and Defendants are engaged in providing policies of insurance in this state.

15.     Venue is proper in this Court under the provisions of K.S.A. 60-604.

## Parties

16.     MNR, LLC is a Kansas limited liability company active and in good standing.

17.     MNR, LLC's registered office is located at 15520 S. Mahaffie Street, Olathe, Kansas 66062.

18.     MNR, LLC operates two (2) Hampton Inns, one located at 7611 Shaffer Parkway, Littleton, Colorado 80127-3005 and one at 850 S. Main St., Longmont, Colorado 80501-6457.

19.     Liberty Mutual is one of the world's largest property and casualty insurers with its principal place of business located at 175 Berkley St., Boston, MA.

20.     Liberty Mutual through its subsidiaries, directly and indirectly, issue among other things, property insurance.

21.     Ohio Security is a stock buyer and casualty insurance company domiciled in New Hampshire, which appears to be an underwriter of the policy.

22.     Liberty Mutual and/or Ohio Security issued to Plaintiff policy number DKS (20) 55 15 90 54 for the policy period between July 25, 2019 to July 25, 2020 (the "Policy").

23.     Plaintiff has continually and without interruption paid the policy premiums to Liberty Mutual and/or Ohio Security specifically to provide coverages for coverage of loss, business income, and extra expenses in the event of an involuntary business interruption.

*Clerk of the District Court, Johnson County Kansas*
*09/09/20  05:11pm NG*

## **Factual Background**

24.     Liberty Mutual's insurance policies issued to Plaintiff are "all-risk" commercial property policies that cover loss or damage to the covered premises resulting from all risk other than those expressly excluded.

25.     Plaintiff did not participate in the drafting or negotiating of the policies with Liberty Mutual.

26.     The policy includes standard forms used by Liberty Mutual for all insureds having applicable coverage.

27.     Among the coverages provided by the policy was business interruption insurance which, generally, would indemnify Plaintiff for lost income and profits if its business were shut down.

28.     The Business Income (and extra expense) Coverage Form, Commercial Property Form CP 00 30 10 12 in the policy provided coverage for Plaintiff as follows:

> We will pay for the actual loss of business income you sustain due to the necessary "suspension" of your "operations" during your "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit Of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of such premises.

In the same policy form, the Policy provided the following additional coverage for Plaintiff:

> 5. **Additional Coverages**
>
> a.  **Civil Authority**
>    In this Additional Coverage, Civil Authority, the described premises or premises to which this Coverage Form applies, as shown in the Declarations.

When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustained and necessary Extra Expenses caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

    (1)  Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage and the described premises are within that area but are not more than one mile from the damaged property; and

    (2)  The action of civil authority is taken in response to dangerous physical conditions resulting from a damage or continuation of the covered cause of loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Civil Authority Coverage for Business Income will begin 72 hours after the time of the first action of civil authority that prohibits access to the described premises and will apply for a period of up to four consecutive weeks from the date on which such coverage began.

Civil Authority Coverage for Extra Expense will begin immediately after the time of the first action of civil authority that prohibits access to the described premises and will end:

    (1)  Four consecutive weeks from the date of that action; or when the civil authority for business income ends; whichever is later; or

    (2)  When the Civil Authority Coverage for Business Income ends; whichever is later.

29.    The Business Income (and Extra Expense) Coverage Form defines Business Income as:

a.  Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and

b.  Continuing normal operating expenses incurred, including payroll.

30.    The Business Income (and Extra Expense) Coverage Form defines Extra Expense as:

Necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.

We will pay Extra Expense (other than the expense to repair or replace property to:

*Clerk of the District Court, Johnson County Kansas*
*09/09/20  05:11pm NG*

(1) Avoid or minimize the "suspension" of business and to continue operations at the described premises or at the described premises or at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location.

(2) Minimize the "suspension" of business if you cannot continue "operations."

We will also pay Extra Expense to repair or replace property, but only to the extent it reduces the amount of loss that otherwise would have been payable under this Coverage Form.

31.     Plaintiff has suffered a direct physical loss of and damage to its property because they have been unable to use its property for its intended purpose.

32.     On or about April 14, 2020, Plaintiff was advised its claim with Liberty Mutual for Business Interruption Insurance was denied because Plaintiff had allegedly not suffered direct physical loss or damage for purposes of that coverage and that no surrounding property had suffered direct physical loss or damages or for purposes of the Civil Authority Coverage.

33.     Defendant Liberty Mutual's denial was wrongful because Plaintiff had suffered direct physical loss or damage within the definition of the policy.

34.     As the drafter of the policy, if Defendant Liberty Mutual had wished to exclude from coverage as "physical loss or damage" loss of use of property that has not been physically altered, it could have used explicit language stating such definition of "physical loss or damage". It did not do so.

35.     Any virus and bacteria endorsement does not apply because Plaintiff's losses were not caused by a "virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease". Rather, the proximate cause of Plaintiff's losses were cautionary measures taken by the State of Colorado and other government authorities to prevent the spread of COVID-19 in the future, not because Coronavirus was found in or on Plaintiff's insured property.

*Clerk of the District Court, Johnson County Kansas*
*09/09/20  05:11pm NG*

**The Colorado Closure Orders**

36.     On March 11, 2020, Colorado Governor Jared Polis issued Executive Order D 2020 003 which declared a Disaster Emergency due to the Covid-19 outbreak.

37.     On March 22, 2020, Colorado Governor Jared Polis issued Executive Order D 2020 013 which ordered employers to reduce the in-person workforce by fifty percent.

38.     On March 25, 2020, Colorado Governor Jared Polis issued Executive Order D 2020 017 which ordered Coloradans to stay home and directed businesses to close.  On April 6, 2020, Governor Jared Polis issued Executive Order D 2020 024, which extended Executive Order D 2020 017 to April 26, 2020.

## COUNT I – DECLARATORY JUDGMENT-BUSINESS INCOME COVERAGE

39.     Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 37 as if fully set forth herein.

40.     Policies or contracts under which Liberty Mutual was paid premium in exchange for its promise to pay Plaintiff's losses for claims covered by the policies.

41.     Plaintiff has complied with all applicable provisions of the policies and/or those provisions have been waived by Liberty Mutual or Liberty Mutual is estopped from asserting them, and yet Liberty Mutual has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms and have wrongfully and illegally refused to provide coverage for which Plaintiff is entitled.

42.     Liberty Mutual has denied claims related to COVID-19 on a uniform basis, without individual basis's or investigations, so the Court can render a Declaratory Judgment.

43.     Pursuant to KSA 60-1701, *et seq.*, an actual case or controversy exists regarding Plaintiff's rights and Liberty Mutual's obligations under the policies to reimburse Plaintiff for the

8

full amount of Business Income Losses incurred by Plaintiff in connection with the suspension of its businesses stemming from orders intended to mitigate the COVID-19 pandemic.

44.     Pursuant to KSA 60-1701 *et seq.*, Plaintiff seeks a Declaratory Judgment from this Court declaring the following:

1.  Plaintiff's Business Income Losses incurred in connection with the Closure Order and the necessary interruption of its business stemming from orders intended to mitigate the COVID-19 pandemic are insured losses under its policy; and

2.  Liberty Mutual is obligated to pay Plaintiff for the full amount of Business Income Losses related to the Closure Order during the period of restoration and the necessary interruption of its businesses stemming from the orders intended to mitigate the COVID-19 pandemic.

## COUNT II – BREACH OF CONTRACT-BUSINESS INCOME COVERAGE

45.     Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 43 as if fully set forth herein.

46.     The Policies issued by Liberty Mutual are contracts whereby Liberty Mutual was paid premium in exchange for its promise to pay Plaintiff's losses for claims covered by the Policies.

47.     In the Business Income (and Extra Expense) Coverage Form, Liberty Mutual agreed to pay for its insureds' actual loss of Business Income sustained due to the necessary suspension of its operations during the "period of restoration."

48.     In the Business Income (and Extra Expense) Coverage Form, Liberty Mutual agreed to pay for its insureds' actual loss of Business Income sustained due to the necessary

9

"suspension" of its operations during the "period of restoration" caused by direct physical loss or damage. "Business Income" under the Policy means the "net income (net profit or loss before income taxes) that would have been earned or incurred if no physical loss or damage had occurred", as well as "[c]ontinuing the normal operating expenses incurred, including payroll".

49.     The Closure Orders referred to above (the "Closure Orders") caused direct physical loss and damage to Plaintiff requiring suspension of operations. Losses caused by these Orders thus triggered the Business Income provision of Plaintiff's Policies.

50.     Plaintiff has complied with all applicable provisions of the Policy and/or those provisions have been waived by Liberty Mutual or Liberty Mutual is now estopped from asserting them and yet Liberty Mutual has abrogated its insurance coverage obligations pursuant to the Policies' clear and unambiguous terms.

51.     By denying coverage for any Business Income Losses incurred by Plaintiff as a result of the Orders, Liberty Mutual has breached its coverage obligations under the Policies.

52.     Because of Liberty Mutual's breaches of the Policies, Plaintiff has sustained substantial damages for which Liberty Mutual is liable, in an amount to be established at trial.

## COUNT III –ANTICIPATORY BREACH OF CONTRACT

53.     Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 51 as if fully set forth herein.

54.     The Policy is a contract under which Liberty Mutual was paid premium in exchange for its promise to pay Plaintiff's losses for claims covered by the Policy.

55.     In the Business Income (and Extra Expense) Coverage Form, Liberty Mutual agreed to pay for its insureds' actual loss of Business Income sustained due to the necessary suspension of its operations during the "period of restoration."

10

*Clerk of the District Court, Johnson County Kansas*
*09/09/20  05:11pm NG*

56.     In the Business Income (and Extra Expense) Coverage Form, Liberty Mutual agreed to pay for its insureds' actual loss of business Income stained due to the necessary "suspension" its "operations" during the "period of restoration" caused by the direct physical or damage. A "partial slow down or complete cessation" of business activities of the covered property is a "suspension" under the Policy for which Liberty Mutual agreed to pay for loss of Business Income during the "period of restoration" "that occurs within 24 consecutive months after the date of direct physical loss or damage."

57.     "Business Income" under the policy means "net income (net profit or loss before income taxes) that would have been earned or incurred if no physical loss or damage had occurred", as well as "[c]ontinuing the normal operating expenses incurred, including payroll".

58.     The Closure Orders caused direct physical loss and damage to Plaintiff's covered properties, requiring suspension of operations at the covered properties. Losses caused by the Closure Order thus triggered the Business Income provisions of the Policies.

59.     Notwithstanding the foregoing, Liberty Mutual will pay Business Interruption Claims only if the subject property is physically altered.

60.     As a result, Liberty Mutual has anticipatorily breached the policies of Plaintiff who has suffered physical loss or damage to the property because the use of the property has been substantially impaired and, thus, would be entitled to coverage under their Policies under applicable law, but for Liberty Mutual's anticipatory breach of contract.

61.     Plaintiff has complied with all applicable provisions of its Policy and/or Liberty Mutual has waived those provisions or Liberty Mutual is estopped from asserting them, and yet Liberty Mutual has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms.

*Clerk of the District Court, Johnson County Kansas*
*09/09/20  05:11pm NG*

62.     Because of Liberty Mutual's breaches of the policies, Plaintiff has sustained substantial damages for which Liberty Mutual is liable in an amount to be established at trial.

## COUNT IV – DECLARATORY JUDGMENT-CIVIL AUTHORITY COVERAGE

63.     Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 61 as if fully set forth herein.

64.     The Policy is a contract under which Liberty Mutual was paid premium in exchange for its promise to pay Plaintiff's losses for claims covered by the Policy.

65.     Plaintiff has complied with all applicable provisions of its Policy and/or Liberty Mutual has waived those provisions or Liberty Mutual is estopped from asserting them, and yet Liberty Mutual has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage for which Plaintiff is entitled.

66.     Liberty Mutual has denied claims related to COVID-19.

67.     An actual case or controversy exists regarding Liberty Mutual's obligations under the Policy to reimburse Plaintiff for the full amount of coverage Civil Authority Losses incurred by Plaintiff in connection with Closure Orders and the necessary interruption of its businesses stemming from the Orders intended to mitigate the COVID-19 Pandemic.

68.     Pursuant to KSA 60-1701 *et seq.*, Plaintiff seeks Declaratory Judgment from this Court declaring the following:

1.  Plaintiff's Civil Authority Losses incurred in connection with the Closure Orders and the necessary interruption of its businesses stemming from the COVID-19 Pandemic are insured losses under the Policy; and

*Clerk of the District Court, Johnson County Kansas*
*09/09/20  05:11pm NG*

2.   Liberty Mutual is obligated to pay Plaintiff the full amount of the Civil Authority Losses incurred and to be incurred in connection with the covered losses related to the Closure Orders and the necessary interruption of its businesses stemming from the Orders intended to mitigate the COVID-19 Pandemic.

## COUNT V – BREACH OF CONTRACT-CIVIL AUTHORITY COVERAGE

69.   Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 67 as if fully set forth herein.

70.   The Policy is a contract under which Liberty Mutual was paid premium in exchange for its promise to pay Plaintiff's losses for claims covered by the Policy.

71.   Liberty Mutual Business Income (and Extra Expense) Coverage Form provides "Civil Authority" coverage, which promises to pay "the actual loss of Business Income you sustain and necessary Extra Expense caused by action of Civil Authority that prohibits access to the described premises, provided that both of the following apply:

> (1)  Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage and the described premises are within that area but are not more than one mile from the damaged property; and
> (2)  The action of civil authority is taken in response to dangerous physical conditions resulting from a damage or continuation of the covered cause of loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property."

72.   The Closure Orders triggered the Civil Authority provision under the Policy.

73.   Plaintiff has complied with all applicable provisions of its Policy and/or Liberty Mutual has waived those provisions or Liberty Mutual is estopped from asserting them, and yet Liberty Mutual has abrogated its insurance coverage obligations pursuant to the policies' clear and

unambiguous terms and has wrongfully and illegally refused to provide coverage for which Plaintiff is entitled.

74.     By denying coverage for any Business Losses incurred by Plaintiff in connection with the Closure Orders and Orders intended to mitigate the COVID-19 Pandemic, Liberty Mutual has breached its coverage obligation under the Policy.

75.     Because of Liberty Mutual's breaches under the Policy, Plaintiff has sustained substantial damages for which Liberty Mutual is liable, in an amount to be established at Trial.

## COUNT VI – DECLARATORY JUDGMENT-EXTRA EXPENSE COVERAGE

76.     Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 74 as if fully set forth herein.

77.     The Policy is a contract under which Liberty Mutual was paid premium in exchange for its promise to pay Plaintiff's losses for claims covered by the Policy.

78.     Plaintiff has complied with all applicable provisions of its Policy and/or Liberty Mutual has waived those provisions or Liberty Mutual is estopped from asserting them, and yet Liberty Mutual has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiff is entitled.

79.     Liberty Mutual has denied claims related to COVID-19.

80.     An actual case or controversy exists regarding Liberty Mutual's obligation under the Policy to reimburse Plaintiff for the full amount of Extra Expense Losses incurred by Plaintiff in connection with Closure Orders and the necessary interruption of its businesses stemming from Orders intended to mitigate the COVID-19 Pandemic.

14

*Clerk of the District Court, Johnson County Kansas*
*09/09/20  05:11pm NG*

81.     Pursuant to KSA 60-1701 *et seq.*, Plaintiff seeks Declaratory Judgment from this Court declaring the following:

1.  Plaintiff's Business Income Losses incurred in connection with the Closure Order and the necessary interruption of its business stemming from orders intended to mitigate the COVID-19 pandemic are insured losses under its policy; and

2.  Liberty Mutual is obligated to pay Plaintiff for the full amount of Extra Expenses Losses incurred and to be incurred in connection with the Covered Losses related to the Closure Order during the period of restoration and the necessary interruption of its businesses stemming from the orders intended to mitigate the COVID-19 pandemic.

## COUNT VII – BREACH OF CONTRACT-EXTRA EXPENSE COVERAGE

82.     Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 80 as if fully set forth herein.

83.     The Policy is a contract under which Liberty Mutual was paid premium in exchange for its promise to pay Plaintiff's losses for claims covered by the Policy.

84.     In the Business Income (and Extra Expense) Coverage Form, Liberty Mutual also agreed to pay necessary Extra Expenses that its insureds incur during the "period of restoration" that the insureds would not have incurred if there had been no direct physical loss or damage to the described premises. "Extra Expense" means expenses "to avoid or minimize the "suspension" of business and to continue operations" and to repair or replace property.

85.     Due to the Closure Orders, Plaintiff incurred Extra Expense of covered property.

86. Plaintiff has complied with all applicable provisions of its Policy and/or Liberty Mutual has waived those provisions or Liberty Mutual is estopped from asserting them, and yet Liberty Mutual has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms.

87. By denying coverage for any Business Losses incurred by Plaintiff in connection with the Closure Orders and Orders intended to mitigate the COVID-19 Pandemic, Liberty Mutual has breached its coverage obligation under the Policies.

88. Because of Liberty Mutual's breaches of the Policies, Plaintiff has sustained substantial damages for which Liberty Mutual is liable in an amount to be established at trial.

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

1. Issuing a Declaratory Judgment declaring the parties' rights and obligations under the policy;

2. Awarding Plaintiff compensatory damages from Liberty Mutual's breach of the policy in an amount to be determined at trial, together with appropriate pre-judgment interest at the maximum rate allowed by law;

3. Awarding Plaintiff costs and reasonable allowance for the fees of Plaintiff and reimbursement of expenses; and

4. Awarding such other and further relief the Court deems just, proper and equitable.

Respectfully submitted,

**BROWN & RUPRECHT, PC**

By:  */s/Kurt S. Brack*
Kurt S. Brack, KS Bar #14797
2323 Grand Blvd, Suite 1100
Kansas City, MO  64108
(816) 292-7000
(816) 292-7050 (Fax)
kbrack@brlawkc.comn
**Attorneys for Plaintiff**

### CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of September, 2020, a copy of the above and foregoing was filed with the Court's electronic filing system, which served a copy upon all parties of record.

*/s/Kurt S. Brack*
Kurt S. Brack

IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS
CIVIL COURT DEPARTMENT


MNR  LLC

                              Plaintiff                    Case No: 20CV02929
                vs                                         Division:   4
                                                           K.S.A. Chapter 60
LIBERTY MUTUAL INSURANCE COMPANY
                              Defendant


REQUEST AND SERVICE INSTRUCTION FORM


To:  Clerk of the District Court:


Please issue a(n) SUMMONS and PETITION in this action for OHIO SECURITY INSURANCE
COMPANY whose address for service is:

        COMMISSIONER OF INSURANCE, 420 SW 9TH STREET
        TOPEKA, KS 66612


Service by an authorized process server.


PLEASE ALLOW 40 DAYS FOR RESPONSE!


                              By: /s/ KURT S BRACK
                              KURT S BRACK, #14797
                              2323 GRAND BLVD STE 1100
                              KANSAS CITY, MO 64108
                              816-292-7000

20CV02929
Div4

## AFFIDAVIT OF SERVICE

**State of Kansas**         **County of Johnson**        **District Court**

Case Number: 20CV02929

Plaintiff:
**MNR LLC**

vs.

Defendant:
**LIBERTY MUTUAL INSURANCE COMPANY**

POW2020008269

For:
BROWN & RUPRECHT
2323 GRAND BLVD
Ste 1100
Kansas City, MO 64108

Received by D & B Legal Services, Inc. on the 10th day of September, 2020 at 12:02 pm to be served on **OHIO SECURITY INSURANCE COMPANY C/O KANSAS COMMISSIONER OF INSURANCE, 1300 SW ARROWHEAD RD, TOPEKA, KS 66604**.

I, Greg Noll PPS20-0094, being duly sworn, depose and say that on the **10th day of September, 2020** at **1:35 pm, I:**

served a **CORPORATION** by delivering a true copy of the **Summons and First Amended Petition and $25.00 Check** with the date and hour of service endorsed thereon by me, to: **ANITA SMITH** as **AUTHORIZED AGENT** for **OHIO SECURITY INSURANCE COMPANY**, at the address of: **1300 SW ARROWHEAD RD, TOPEKA, KS 66604**.

I certify that I am over the age of 18 and have no interest in the above action and the foregoing statements made by me are true and correct.

Subscribed and Sworn to before me on the 14th day of
September, 2020

NOTARY PUBLIC
JAMES HANNAH
Notary Public - State of Kansas
My Appt. Expires 8/23/23

**Greg Noll PPS20-0094**
Process Server

**D & B Legal Services, Inc.**
**P.O. Box 7471**
**Overland Park, KS 66207**
**(913) 362-8110**

Our Job Serial Number: POW-2020008269

Copyright © 1992-2020 Database Services, Inc. - Process Server's Toolbox V8.1c

*Clerk of the District Court, Johnson County Kansas*
*09/14/20  02:40pm ST*

079

**STATE OF KANSAS**
**DEPARTMENT OF INSURANCE**

# COMMISSIONER'S PROOF OF SERVICE

MNR LLC

Plaintiff

VS.

Ohio Security Insurance Company

Defendant

Case No.  20CV02929

District Court
Johnson County
Olathe, Kansas

I, Vicki Schmidt, Commissioner of Insurance, do hereby certify that on September 11, 2020, I received the

Summons and First Amended Petition in the above captioned case.

Pursuant to K.S.A. 40-218, a copy thereof was forwarded by certified mail, return receipt requested to:

Ohio Security Insurance Company
c/o Corporation Service Company
2900 SW Wanamaker Dr. Ste. 204
Topeka, KS  66614-4188

DISPOSITION:  Clerk is to indicate final disposition on second copy and forward same to:  KANSAS COMMISSIONER

OF INSURANCE, 1300 SW ARROWHEAD ROAD, TOPEKA, KANSAS, 66604.



IN WITNESS WHEREOF, I have hereunto set my hand and
affixed my Official Seal at the City of Topeka, this 14th day of
September, 2020.

Vicki Schmidt
Commissioner of Insurance

BY:

Justin L. McFarland
General Counsel

SCAN DATE 2020/09/18 08:37

CLERK OF DISTRICT COURT
JOHNSON COUNTY, KS
2020 SEP 18  AM 8: 30
NG

IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS
CIVIL COURT DEPARTMENT

MNR LLC

Plaintiff

vs

OHIO SECURITY INSURANCE COMPANY
Defendant

Case No: 20CV02929
Division:  4
K.S.A. Chapter 60

SUMMONS

To the above-named defendant:

YOU ARE HEREBY NOTIFIED that an action has been commenced against you in this court.
You are required to file your answer to the petition with the court and to serve a copy upon the
plaintiff's attorney, as follows:

Name:   KURT S BRACK
Address: 2323 GRAND BLVD STE 1100
         KANSAS CITY, MO 64108
Phone:  (816) 292-7000

Within 40 days after service of summons upon you.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the
attached petition, which is incorporated herein by reference. Any related claim which you may have
against the plaintiff must be stated as a counterclaim in your answer, or you will thereafter be barred
from making such claim in any other action.



/s/ Jennie Leach
Clerk of the District Court

Dated:   September 10, 2020

Johnson County Court House, 100 N. Kansas Ave.  Olathe, KS 66061

**IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS
CIVIL COURT DEPARTMENT**

| | |
|---|---|
| MNR, LLC, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **Case No. 20CV02929** |
| ) | **Division 4** |
| LIBERTY MUTUAL INSURANCE ) | |
| COMPANY and OHIO SECURITY ) | |
| INSURANCE COMPANY, ) | |
| ) | |
| **Defendants.** ) | |

<u>**ANSWER AND AFFIRMATIVE DEFENSES TO FIRST AMENDED PETITION**</u>

Defendant Liberty Mutual Insurance Co. ("Liberty Mutual"), improperly named as defendant issuing the insurance policy that is the subject of this action, and Defendant Ohio Security Insurance Company ("Ohio Security" and, collectively with Liberty Mutual, "Defendants"), by their attorneys, for their Answer in response to Plaintiffs' First Amended Petition (the "Petition"), state as follows:

1.      Plaintiff brings this action against Defendants due to Defendants' failure to provide insurance coverage for the losses sustained and expenses incurred to Plaintiff because of the ongoing Coronavirus (COVID-19) pandemic.

**ANSWER:**      Defendants admit that Plaintiff has brought this action against Liberty Mutual and Ohio Security Defendants deny the remaining allegations of paragraph 1 of the Petition.

2.      For several years Plaintiff has operated two hotels; one in Littleton, Colorado and one in Longmont, Colorado. Plaintiffs operations have been and continue to be suspended and

*Clerk of the District Court, Johnson County Kansas*
*10/12/20  08:33am HS*

threatened by the Novel Coronavirus, which causes the infectious disease COVID-19 ("COVID-19").

**ANSWER:**   Defendants admit that the scientific community refers to SARS-CoV-2 as the coronavirus and COVID-19 as the disease from the coronavirus.  As to the remaining allegations in paragraph 2 of the Petition, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations and, accordingly, deny the same.

3.      On March 11, 2020 the World Health Organization declared the COVID-19 outbreak a worldwide pandemic: "WHO has been assessing this outbreak around the clock and we are deeply concerned by both the alarming levels of spread and severity, and by the alarming levels of inaction. We have therefore made the assessment that COVID-19 can be characterized as a pandemic."

**ANSWER:**   Defendants admit the allegations in paragraph 3 of the Petition.

4.      On March 16, 2020 the Centers for Disease Control and Prevention and members of the National Coronavirus Task Force issued to the American Public guidance styled as "Thirty Days to Slow the Spread" for stopping the spread of COVID-19. This guidance advised individuals to adopt far-reaching social distancing measures, such as working from home, avoiding shopping trips and gatherings of more than 10 people, and staying away from bars, restaurants, gyms and food courts.

**ANSWER:**   Defendants deny that the url provided by the Plaintiff in paragraph 4 of the Petition is accurate.  Answering further, Defendants state that the document referenced in paragraph 4 speaks for itself, and Defendants deny any allegations in paragraph 4 that are inconsistent with it. As to the remaining allegations in paragraph 4 of the Petition, Defendants are without knowledge

2

*Clerk of the District Court, Johnson County Kansas*
*10/12/20  08:33am HS*

or information sufficient to form a belief as to the truth of the allegations and, accordingly, deny the same.

5.      Following this advice, many state governments, including Colorado, took measures in the form of emergency orders to protect the health and safety of their residents from the human to-human and surface-to-human spread of COVID-19.

**ANSWER:**   Defendants admit that many state governments issued orders to preserve public health and safety, to ensure that the healthcare delivery system is capable of serving those who are sick, and to slow and stop the spread of the coronavirus and Covid-19.  Defendants further state that such orders are not attached to or quoted in their entirety in the Petition and speak for themselves, and deny any allegations in paragraph 5 that are inconsistent with these orders. Defendants deny the remaining allegations in paragraph 5 of the Petition.

6.      As a result, many governmental entities, including Colorado, entered Civil Authority Orders suspending or severely limiting business operations of "non-essential businesses" that interact with the public and provide gathering places for the individuals.

**ANSWER:**   Defendants admit that many state governments issued orders to preserve public health and safety, to ensure that the healthcare delivery system is capable of serving those who are sick, and to slow and stop the spread of the coronavirus and Covid-19.  Defendants further state that such orders are not attached to or quoted in their entirety in the Petition and speak for themselves, and deny any allegations in paragraph 6 that are inconsistent with these orders. Defendants deny the remaining allegations in paragraph 6 of the Petition.

7.      Over forty (40) states within the United States issued some type of "stay-at-home" emergency order closing private non-essential business operations.

3

*Clerk of the District Court, Johnson County Kansas*
*10/12/20  08:33am HS*

**ANSWER:**   Defendants admit that many state governments issued orders to preserve public health and safety, to ensure that the healthcare delivery system is capable of serving those who are sick, and to slow and stop the spread of the coronavirus and Covid-19.  Defendants further state that such orders are not attached to or quoted in their entirety in the Petition and speak for themselves, and deny any allegations in paragraph 7 that are inconsistent with these orders. Defendants deny the remaining allegations in paragraph 7 of the Petition.

8.      The result of these closures has been catastrophic for most of the non-essential businesses, especially retail establishments that were forced to close, furlough employees, and endure a sudden shut-down of cash flow that threatens their survival.

**ANSWER:**   Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 8 of the Petition and, accordingly, deny the same.

9.      Many businesses pay significant premiums to insure against such catastrophic events like the government-issued orders mandating suspension of business activities through all-risk commercial property insurance policies.

**ANSWER:**   Defendants deny the allegations in paragraph 9 insofar as they relate to them and are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 9 of the Petition and, accordingly, deny the same.

10.      These policies promise to indemnify the policy holder for actual business losses incurred when business operations are involuntarily suspended, interrupted, curtailed, when public access is prohibited because of direct physical loss or damage to the property, or by civil authority order that restricts or prohibits access to the property. This coverage, generally known as "business interruption coverage," is standard in most all-risk commercial property insurance policies.

*Clerk of the District Court, Johnson County Kansas*
*10/12/20  08:33am HS*

37136753.1

**ANSWER:**    Defendants state that the policy issued to Plaintiff and at issue in this action is subject to all of the terms, conditions, limitations, and exclusions set forth therein and deny the allegations in paragraph 10 to the extent that they are inconsistent with those terms, conditions, limitations, and exclusions.   As to the remaining allegations in paragraph 10 of the Petition, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations and, accordingly, deny the same.

11.    Defendants are denying their obligation to pay for business income losses and other covered expenses incurred by Plaintiff for the physical loss and damage to the insured property from measures put in place by the civil authorities to stop the spread of COVID-19 among the population.

**ANSWER:**    Defendants deny the allegations in paragraph 11 of the Petition.

12.    Plaintiff, through this action, seeks a declaratory judgment that affirms that the orders issued by civil authorities to stop the spread of the COVID-19 outbreak triggers coverage, has caused physical property loss and damage to the insured property, provides coverage for future civil authority orders that result in future suspensions or curtailments of business operations and finds that Defendants are liable for the losses suffered by Plaintiff.

**ANSWER:**    Defendants admit that Plaintiff seeks a declaratory judgment on the issues described in paragraph 12 of the Petition and deny that Plaintiff is entitled to declaratory judgment on these issues.  Defendants deny any remaining allegations in paragraph 12.

13.    In addition, this action brings claim against Defendants for their breach of their contractual obligation under common all-risk commercial property insurance policies to indemnify Plaintiff and others similarly situated for business losses and extra expenses, and related losses

*Clerk of the District Court, Johnson County Kansas*
*10/12/20  08:33am HS*

37136753.1

resulting from actions taken by civil authorities to stop the human-to-human and surface-to-human spread of the COVID-19 outbreak.

**ANSWER:**   Defendants admit that Plaintiff brings a claim for breach of contract with respect to the issues described in paragraph 13 of the Petition and deny that Plaintiff is entitled to any relief with respect to this claim.  Defendants deny any remaining allegations in paragraph 13.

### Jurisdiction and Venue

14.   This Court has jurisdiction over this matter in that Plaintiff is a Kansas limited liability company and Defendants are engaged in providing policies of insurance in this state.

**ANSWER:**   The allegations in paragraph 14 of the Complaint state legal conclusions to which no response is required.  To the extent a response is deemed necessary, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegation that Plaintiff is a Kansas limited liability company.  Defendants admit the remaining allegations contained in paragraph 14 of the Petition.

15.   Venue is proper in this Court under the provisions of K.S.A. 60-604.

**ANSWER:**   The allegations in paragraph 15 of the Complaint state legal conclusions to which no response is required.  To the extent a response is deemed necessary, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 15 and reserve the right to remove this action to federal court upon confirmation of the citizenship of the members of Plaintiff, a Kansas limited liability company.

### Parties

16.   MNR, LLC is a Kansas limited liability company active and in good standing.

**ANSWER:**   Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 16 of the Petition and, accordingly, deny the same.

6

17.    MNR, LLC's registered office is located at 15520 S. Mahaffie Street, Olathe, Kansas 66062.

**ANSWER:**    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 17 of the Petition and, accordingly, deny the same.

18.    MNR, LLC operates two (2) Hampton Inns, one located at 7611 Shaffer Parkway, Littleton, Colorado 80127-3005 and one at 850 S. Main St., Longmont, Colorado 80501-6457.

**ANSWER:**    Defendants admit that MNR, LLC operates hotels at the listed addresses. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 18 of the Petition and, accordingly, deny the same.

19.    Liberty Mutual is one of the world's largest property and casualty insurers with its principal place of business located at 175 Berkley St., Boston, MA.

**ANSWER:**    Defendants admit that Liberty Mutual is a property and casualty insurer and its principal place of business is 175 Berkeley Street, Boston, Massachusetts.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 19 of the Petition and, accordingly, deny the same.

20.    Liberty Mutual through its subsidiaries, directly and indirectly, issue among other things, property insurance.

**ANSWER:**    Defendants admit that Liberty Mutual issues property insurance policies. Defendants deny the allegations in paragraph 20 of the Petition to the extent that they mischaracterize Liberty Mutual's corporate structure.  The remaining allegations of paragraph 20 of the Petition are incomprehensible and accordingly, Defendants deny the same.

21.    Ohio Security is a stock buyer and casualty insurance company domiciled in New Hampshire, which appears to be an underwriter of the policy.

*Clerk of the District Court, Johnson County Kansas*
*10/12/20  08:33am HS*

37136753.1

**ANSWER:**     Defendants state that Ohio Security is an insurance company incorporated in New Hampshire and issued the insurance policy at issue in this action.  Defendant deny the remaining allegations of paragraph 21 of the Petition.

22.     Liberty Mutual and/or Ohio Security issued to Plaintiff policy number DKS (20) 55 15 90 54 for the policy period between July 25, 2019 to July 25, 2020 (the "Policy").

**ANSWER:**     Defendants admit that Ohio Security issued the insurance policy referenced in paragraph 22 of the Petition and state that Policy No. BKS (2) 55 15 90 54 was effective for the period from July 25, 2019 to July 25, 2020 (the "Policy").  Defendants deny the remaining allegations of paragraph 22 of the Petition.

23.     Plaintiff has continually and without interruption paid the policy premiums to Liberty Mutual and/or Ohio Security specifically to provide coverages for coverage of loss, business income, and extra expenses in the event of an involuntary business interruption.

**ANSWER:**     Defendants admit that Plaintiff has paid the premium due for the Policy. Defendants admit that the Policy provides certain coverages and state that the Policy is subject to all of the terms, conditions, limitations, and exclusions set forth therein and deny the allegations in paragraph 23 of the Petition to the extent that they are inconsistent with those terms, conditions, limitations, and exclusions.  Defendants deny any remaining allegations in paragraph 23 of the Petition.

## Factual Background

24.     Liberty Mutual's insurance policies issued to Plaintiff are "all-risk" commercial property policies that cover loss or damage to the covered premises resulting from all risk other than those expressly excluded.

8

*Clerk of the District Court, Johnson County Kansas*
*10/12/20  08:33am HS*

**ANSWER:**   Defendants deny that Liberty Mutual issued the Policy.   Answering further, Defendants state that the Policy and any other insurance policies issued to Plaintiff by Ohio Security Insurance Company provide certain coverages and state that these policies are subject to all of the terms, conditions, limitations, and exclusions set forth therein and deny the allegations in paragraph 24 of the Petition to the extent that they are inconsistent with those terms, conditions, limitations, and exclusions.

26. Plaintiff did not participate in the drafting or negotiating of the policies with Liberty Mutual.

**ANSWER:**   Defendants deny the allegations contained in paragraph 25 of the Petition.

26. The policy includes standard forms used by Liberty Mutual for all insureds having applicable coverage.

**ANSWER:**   Defendants admit that the Policy includes various forms and further state that the Policy is subject to all of the terms, conditions, limitations, and exclusions set forth therein and deny the allegations in paragraph 26 of the Petition to the extent that they are inconsistent with those terms, conditions, limitations, and exclusions.  Defendants deny the remaining allegations in paragraph 26 of the Petition.

27. Among the coverages provided by the policy was business interruption insurance which, generally, would indemnify Plaintiff for lost income and profits if its business were shut down.

**ANSWER:**   Defendants state that the Policy provides business interruption coverage subject to all of the terms, conditions, limitations, and exclusions set forth therein and deny the allegations in paragraph 27 of the Petition to the extent that they are inconsistent with those terms, conditions,

*Clerk of the District Court, Johnson County Kansas*
*10/12/20  08:33am HS*

limitations, and exclusions.  Defendants deny the remaining allegations in paragraph 27 of the Petition.

28.    The Business Income (and extra expense) Coverage Form, Commercial Property Form CP 00 30 10 12 in the policy provided coverage for Plaintiff as follows:

> We will pay for the actual loss of business income you sustain due to the necessary "suspension" of your "operations" during your "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit Of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of such premises.

In the same policy form, the Policy provided the following additional coverage for Plaintiff:

> 5.    **Additional Coverages**
>
> a.    **Civil Authority**
> In this Additional Coverage, Civil Authority, the described premises or premises to which this Coverage Form applies, as shown in the Declarations.
> When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustained and necessary Extra Expenses caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:
>> (1)    Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage and the described premises are within that area but are not more than one mile from the damaged property; and
>> (2)    The action of civil authority is taken in response to dangerous physical conditions resulting from a damage or continuation of the covered cause of loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.
>
> Civil Authority Coverage for Business Income will begin 72 hours after the time of the first action of civil authority that prohibits access to the described

10

premises and will apply for a period of up to four consecutive weeks from the date on which such coverage began.

Civil Authority Coverage for Extra Expense will begin immediately after the time of the first action of civil authority that prohibits access to the described premises and will end:

      (1)    Four consecutive weeks from the date of that action; or when the civil authority for business income ends; whichever is later; or

(2)    When the Civil Authority Coverage for Business Income ends; whichever is later.

**ANSWER:**    Defendants deny that the Policy contains language as quoted in paragraph 28 of the Petition. Answering further, Defendants state that the Policy is subject to all of the terms, conditions, limitations, and exclusions set forth therein and deny the allegations in paragraph 28 of the Petition to the extent that they are inconsistent with those terms, conditions, limitations, and exclusions. Defendants deny any remaining allegations in paragraph 28 of the Petition.

      29.    The Business Income (and Extra Expense) Coverage Form defines Business Income as:

      a.    Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and

      b.    Continuing normal operating expenses incurred, including payroll.

**ANSWER:**    Defendants admit that the Policy contains the language quoted in paragraph 29 of the Petition. Answering further, Defendants state that the Policy is subject to all of the terms, conditions, limitations, and exclusions set forth therein. Defendants deny the allegations of paragraph 29 to the extent that they are inconsistent with the terms, conditions, limitations, and exclusions in the Policy.

      30.    The Business Income (and Extra Expense) Coverage Form defines Extra Expense as:

Necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.

11

*Clerk of the District Court, Johnson County Kansas*
*10/12/20  08:33am HS*

We will pay Extra Expense (other than the expense to repair or replace property to:
(1)     Avoid or minimize the "suspension" of business and to continue operations at the described premises or at the described premises or at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location.
(2)     Minimize the "suspension" of business if you cannot continue "operations."
We will also pay Extra Expense to repair or replace property, but only to the extent it reduces the amount of loss that otherwise would have been payable under this Coverage Form.

**ANSWER:**     Defendants deny that the Policy contains language as quoted in paragraph 29 of the Petition. Answering further, Defendants state that the Policy is subject to all of the terms, conditions, limitations, and exclusions set forth therein and deny the allegations in paragraph 30 of the Petition to the extent that they are inconsistent with those terms, conditions, limitations, and exclusions. Defendants deny any remaining allegations in paragraph 30 of the Petition.

31.     Plaintiff has suffered a direct physical loss of and damage to its property because they have been unable to use its property for its intended purpose.

**ANSWER:**     Defendants deny the allegations contained in paragraph 31 of the Petition.

32.     On or about April 14, 2020, Plaintiff was advised its claim with Liberty Mutual for Business Interruption Insurance was denied because Plaintiff had allegedly not suffered direct physical loss or damage for purposes of that coverage and that no surrounding property had suffered direct physical loss or damages or for purposes of the Civil Authority Coverage.

**ANSWER:**     Defendants admit that a letter denying Plaintiff's claim under the Policy with respect to COVID-19 was sent to Plaintiff on or about April 14, 2020. Answering further, Defendants state that this denial letter speaks for itself and deny any allegations to the extent that they are inconsistent with this letter. Defendants deny any remaining allegations in paragraph 31 of the Petition.

12

33.     Defendant Liberty Mutual's denial was wrongful because Plaintiff had suffered direct physical loss or damage within the definition of the policy.

**ANSWER:**     Defendants deny the allegations contained in paragraph 33 of the Petition.

34.     As the drafter of the policy, if Defendant Liberty Mutual had wished to exclude from coverage as "physical loss or damage" loss of use of property that has not been physically altered, it could have used explicit language stating such definition of "physical loss or damage". It did not do so.

**ANSWER:**     Defendants deny the allegations contained in paragraph 34 of the Petition.

35.     Any virus and bacteria endorsement does not apply because Plaintiffs losses were not caused by a "virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease". Rather, the proximate cause of Plaintiffs losses were cautionary measures taken by the State of Colorado and other government authorities to prevent the spread of COVID-19 in the future, not because Corona virus was found in or on Plaintiffs insured property.

**ANSWER:**     Defendants deny the allegations contained in paragraph 35 of the Petition.

### The Colorado Closure Orders

36.     On March 11, 2020, Colorado Governor Jared Polis issued Executive Order D 2020 003 which declared a Disaster Emergency due to the Covid-19 outbreak.

**ANSWER:**     Defendants admit that Plaintiff purports to describe an executive order issued by the Governor of Colorado, state that such order is not attached to or quoted in its entirety in the Petition and speaks for itself, and deny any allegations that are inconsistent with this order. As to the remaining allegations in paragraph 36, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations and, accordingly, deny the same.

13

*Clerk of the District Court, Johnson County Kansas*
*10/12/20  08:33am HS*

37.     On March 22, 2020, Colorado Governor Jared Polis issued Executive Order D 2020 013 which ordered employers to reduce the in-person workforce by fifty percent.

**ANSWER:**     Defendants admit that Plaintiff purports to describe an executive order issued by the Governor of Colorado, state that such order is not attached to or quoted in its entirety in the Petition and speaks for itself, and deny any allegations that are inconsistent with this order.  As to the remaining allegations in paragraph 37, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations and, accordingly, deny the same.

38.     On March 25, 2020, Colorado Governor Jared Polis issued Executive Order D 2020 017 which ordered Coloradans to stay home and directed businesses to close. On April 6, 2020, Governor Jared Polis issued Executive Order D 2020 024, which extended Executive Order D 2020 017 to April 26, 2020.

**ANSWER:**     Defendants admit that Plaintiff purports to describe an executive order issued by the Governor of Colorado, state that such order is not attached to or quoted in its entirety in the Petition and speaks for itself, and deny any allegations that are inconsistent with this order.  As to the remaining allegations in paragraph 38, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations and, accordingly, deny the same.

### COUNT I- DECLARATORY JUDGMENT-BUSINESS INCOME COVERAGE

39.     Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 38 as if fully set forth herein.

**ANSWER:**     Defendants repeat and incorporate by reference their responses to the allegations contained in paragraphs 1 through 38 of the Petition as if each were set forth individually and incorporated fully herein.

14

*Clerk of the District Court, Johnson County Kansas*
*10/12/20  08:33am HS*

40.     Policies or contracts under which Liberty Mutual was paid premium in exchange for its promise to pay Plaintiffs losses for claims covered by the policies.

**ANSWER:**   Answering paragraph 40 of the Petition, Defendants state that Plaintiff paid a premium for the Policy and the Policy provides certain coverage subject to its terms, conditions, limitations, and exclusions.   The remaining allegations of paragraph 40 of the Petition are incomprehensible and accordingly, Defendants deny the same.

41.     Plaintiff has complied with all applicable provisions of the policies and/or those provisions have been waived by Liberty Mutual or Liberty Mutual is estopped from asserting them, and yet Liberty Mutual has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms and have wrongfully and illegally refused to provide coverage for which Plaintiff is entitled.

**ANSWER:**   Defendants deny the allegations contained in paragraph 41 of the Petition.

42.     Liberty Mutual has denied claims related to COVID-19 on a uniform basis, without individual basis's or investigations, so the Court can render a Declaratory Judgment.

**ANSWER:**   Defendants deny the allegations contained in paragraph 42 of the Petition.

43.     Pursuant to KSA 60-1701, *et seq.,* an actual case or controversy exists regarding Plaintiffs rights and Liberty Mutual's obligations under the policies to reimburse Plaintiff for the full amount of Business Income Losses incurred by Plaintiff in connection with the suspension of its businesses stemming from orders intended to mitigate the COVID-19 pandemic.

**ANSWER:**   The allegations in paragraph 43 of the Petition state legal conclusions to which no response is required.   To the extent a response is deemed necessary, Defendants deny the allegations in paragraph 43.

15

*Clerk of the District Court, Johnson County Kansas*
*10/12/20  08:33am HS*

44.     Pursuant to KSA 60-1701 *et seq.,* Plaintiff seeks a Declaratory Judgment from this Court declaring the following:

    1.    Plaintiffs Business Income Losses incurred in connection with the Closure Order and the necessary interruption of its business stemming from orders intended to mitigate the COVID-19 pandemic are insured losses under its policy; and

    2.    Liberty Mutual is obligated to pay Plaintiff for the full amount of Business Income Losses related to the Closure Order during the period of restoration and the necessary interruption of its businesses stemming from the orders intended to mitigate the COVID-19 pandemic.

**ANSWER:**     Defendants admit that Plaintiff seeks declaratory judgment as described in paragraph 44 of the Petition and deny that the Plaintiff is entitled to the declaratory judgment requested.

### COUNT II - BREACH OF CONTRACT-BUSINESS INCOME COVERAGE

45.     Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 43 as if fully set forth herein.

**ANSWER:**     Defendants repeat and incorporate by reference their responses to the allegations contained in paragraphs 1 through 44 of the Petition as if each were set forth individually and incorporated fully herein.

46.     The Policies issued by Liberty Mutual are contracts whereby Liberty Mutual was paid premium in exchange for its promise to pay Plaintiffs losses for claims covered by the Policies.

*Clerk of the District Court, Johnson County Kansas*
*10/12/20  08:33am HS*

**ANSWER:**     Answering paragraph 46 of the Petition, Defendants state that Plaintiff paid a premium for the Policy and the Policy provides certain coverage subject to its terms, conditions, limitations, and exclusions.  Defendants deny the remaining allegations in paragraph 46 of the Petition.

47.     In the Business Income (and Extra Expense) Coverage Form, Liberty Mutual agreed to pay for its insureds' actual loss of Business Income sustained due to the necessary suspension of its operations during the "period of restoration."

**ANSWER:**     Defendants state that the Policy is subject to all of the terms, conditions, limitations, and exclusions set forth therein and deny the allegations in paragraph 47 of the Petition to the extent that they are inconsistent with those terms, conditions, limitations, and exclusions. Defendants deny the remaining allegations in paragraph 47 of the Petition.

48.     In the Business Income (and Extra Expense) Coverage Form, Liberty Mutual agreed to pay for its insureds' actual loss of Business Income sustained due to the necessary "suspension" of its operations during the "period of restoration" caused by direct physical loss or damage. "Business Income" under the Policy means the "net income (net profit or loss before income taxes) that would have been earned or incurred if no physical loss or damage had occurred", as well as "[c]ontinuing the normal operating expenses incurred, including payroll".

**ANSWER:**     Defendants state that the Policy is subject to all of the terms, conditions, limitations, and exclusions set forth therein and deny the allegations in paragraph 48 of the Petition to the extent that they are inconsistent with those terms, conditions, limitations, and exclusions. Defendants deny the remaining allegations in paragraph 48 of the Petition.

*Clerk of the District Court, Johnson County Kansas*
*10/12/20  08:33am HS*

37136753.1

49.     The Closure Orders referred to above (the "Closure Orders") caused direct physical loss and damage to Plaintiff requiring suspension of operations. Losses caused by these Orders thus triggered the Business Income provision of Plaintiffs Policies.

**ANSWER:**     Defendants deny the allegations in paragraph 49 of the Petition.

50.     Plaintiff has complied with all applicable provisions of the Policy and/or those provisions have been waived by Liberty Mutual or Liberty Mutual is now estopped from asserting them and yet Liberty Mutual has abrogated its insurance coverage obligations pursuant to the Policies' clear and unambiguous terms.

**ANSWER:**     Defendants deny the allegations in paragraph 50 of the Petition.

51.     By denying coverage for any Business Income Losses incurred by Plaintiff as a result of the Orders, Liberty Mutual has breached its coverage obligations under the Policies.

**ANSWER:**     Defendants deny the allegations in paragraph 51 of the Petition.

52.     Because of Liberty Mutual's breaches of the Policies, Plaintiff has sustained substantial damages for which Liberty Mutual is liable, in an amount to be established at trial.

**ANSWER:**     Defendants deny the allegations in paragraph 52 of the Petition.

## COUNT III-ANTICIPATORY BREACH OF CONTRACT

53.     Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 51 as if fully set forth herein.

**ANSWER:**     Defendants repeat and incorporate by reference their responses to the allegations contained in paragraphs 1 through 52 of the Petition as if each were set forth individually and incorporated fully herein.

54.     The Policy is a contract under which Liberty Mutual was paid premium in exchange for its promise to pay Plaintiffs losses for claims covered by the Policy.

18

*Clerk of the District Court, Johnson County Kansas*
*10/12/20  08:33am HS*

**ANSWER:**     Defendants state that Plaintiff paid a premium for the Policy and the Policy provides certain coverage subject to its terms, conditions, limitations, and exclusions.  Defendants deny the remaining allegations in paragraph 54 of the Petition.

55.     In the Business Income (and Extra Expense) Coverage Form, Liberty Mutual agreed to pay for its insureds' actual loss of Business Income sustained due to the necessary suspension of its operations during the "period of restoration."

**ANSWER:**     Defendants state that the Policy is subject to all of the terms, conditions, limitations, and exclusions set forth therein and deny the allegations in paragraph 55 of the Petition to the extent that they are inconsistent with those terms, conditions, limitations, and exclusions. Defendants deny the remaining allegations in paragraph 55 of the Petition.

56.     In the Business Income (and Extra Expense) Coverage Form, Liberty Mutual agreed to pay for its insureds' actual loss of business Income stained due to the necessary "suspension" its "operations" during the "period of restoration" caused by the direct physical or damage. A "partial slow down or complete cessation" of business activities of the covered property is a "suspension" under the Policy for which Liberty Mutual agreed to pay for loss of Business Income during the "period of restoration" "that occurs within 24 consecutive months after the date of direct physical loss or damage."

**ANSWER:**     Defendants state that the Policy is subject to all of the terms, conditions, limitations, and exclusions set forth therein and deny the allegations in paragraph 56 of the Petition to the extent that they are inconsistent with those terms, conditions, limitations, and exclusions. Defendants deny the remaining allegations in paragraph 56 of the Petition.

19

*Clerk of the District Court, Johnson County Kansas*
*10/12/20  08:33am HS*

57.     "Business Income" under the policy means "net income (net profit or loss before income taxes) that would have been earned or incurred if no physical loss or damage had occurred", as well as "[c]ontinuing the normal operating expenses incurred, including payroll".

**ANSWER:**     Defendants state that the Policy is subject to all of the terms, conditions, limitations, and exclusions set forth therein and deny the allegations in paragraph 57 of the Petition to the extent that they are inconsistent with those terms, conditions, limitations, and exclusions. Defendants admit that paragraph 57 of the Petition quotes in part a portion of the Policy.

58.     The Closure Orders caused direct physical loss and damage to Plaintiffs covered properties, requiring suspension of operations at the covered properties. Losses caused by the Closure Order thus triggered the Business Income provisions of the Policies.

**ANSWER:**     Defendants deny the allegations in paragraph 58 of the Petition.

59.     Notwithstanding the foregoing, Liberty Mutual will pay Business Interruption Claims only if the subject property is physically altered.

**ANSWER:**     Defendants state that each policy issued by Liberty Mutual is subject to its own terms, conditions, limitations, and exclusions and Liberty Mutual makes coverage determinations based on the facts of the claim and the terms of the applicable policy.  Defendants deny the remaining allegations in paragraph 59 of the Petition.

60.     As a result, Liberty Mutual has anticipatorily breached the policies of Plaintiff who has suffered physical loss or damage to the property because the use of the property has been substantially impaired and, thus, would be entitled to coverage under their Policies under applicable law, but for Liberty Mutual's anticipatory breach of contract.

**ANSWER:**     Defendants deny the allegations in paragraph 60 of the Petition.

*Clerk of the District Court, Johnson County Kansas*
*10/12/20  08:33am HS*

37136753.1

61.     Plaintiff has complied with all applicable provisions of its Policy and/or Liberty Mutual has waived those provisions or Liberty Mutual is estopped from asserting them, and yet Liberty Mutual has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms.

**ANSWER:**     Defendants deny the allegations in paragraph 61 of the Petition.

62.     Because of Liberty Mutual's breaches of the policies, Plaintiff has sustained substantial damages for which Liberty Mutual is liable in an amount to be established at trial.

**ANSWER:**     Defendants deny the allegations in paragraph 62 of the Petition.

## COUNT IV - DECLARATORY JUDGMENT-CIVIL AUTHORITY COVERAGE

63.     Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 61 as if fully set forth herein.

**ANSWER:**     Defendants repeat and incorporate by reference their responses to the allegations contained in paragraphs 1 through 62 of the Petition as if each were set forth individually and incorporated fully herein.

64.     The Policy is a contract under which Liberty Mutual was paid premium in exchange for its promise to pay Plaintiffs losses for claims covered by the Policy.

**ANSWER:**     Defendants state that Plaintiff paid a premium for the Policy and the Policy provides certain coverage subject to its terms, conditions, limitations, and exclusions.  Defendants deny the remaining allegations in paragraph 64 of the Petition.

65.     Plaintiff has complied with all applicable provisions of its Policy and/or Liberty Mutual has waived those provisions or Liberty Mutual is estopped from asserting them, and yet Liberty Mutual has abrogated its insurance coverage obligations pursuant to the policies' clear and

21

*Clerk of the District Court, Johnson County Kansas*
*10/12/20  08:33am HS*

unambiguous terms and has wrongfully and illegally refused to provide coverage for which Plaintiff is entitled.

**ANSWER:**     Defendants deny the allegations in paragraph 65 of the Petition.

66.     Liberty Mutual has denied claims related to COVID-19.

**ANSWER:**     Defendants admit the allegation in paragraph 66 of the Petition.

67.     An actual case or controversy exists regarding Liberty Mutual's obligations under the Policy to reimburse Plaintiff for the full amount of coverage Civil Authority Losses incurred by Plaintiff in connection with Closure Orders and the necessary interruption of its businesses stemming from the Orders intended to mitigate the COVID-19 Pandemic.

**ANSWER:**     Defendants deny the allegations in paragraph 67 of the Petition.

68.     Pursuant to KSA 60-1701 *et seq.,* Plaintiff seeks Declaratory Judgment from this Court declaring the following:

1.     Plaintiffs Civil Authority Losses incurred in connection with the Closure Orders and the necessary interruption of its businesses stemming from the COVID-19 Pandemic are insured losses under the Policy; and

2.     Liberty Mutual is obligated to pay Plaintiff the full amount of the Civil Authority Losses incurred and to be incurred in connection with the covered losses related to the Closure Orders and the necessary interruption of its businesses stemming from the Orders intended to mitigate the COVID-19 Pandemic.

**ANSWER:**     Defendants admit that Plaintiff seeks declaratory judgment as described in paragraph 68 of the Petition and deny that the Plaintiff is entitled to the declaratory judgment requested.

22

*Clerk of the District Court, Johnson County Kansas*
*10/12/20  08:33am HS*

## <u>COUNT V - BREACH OF CONTRACT-CIVIL AUTHORITY COVERAGE</u>

69.     Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 67 as if fully set forth herein.

**<u>ANSWER:</u>**     Defendants repeat and incorporate by reference their responses to the allegations contained in paragraphs 1 through 68 of the Petition as if each were set forth individually and incorporated fully herein.

70.     The Policy is a contract under which Liberty Mutual was paid premium in exchange for its promise to pay Plaintiffs losses for claims covered by the Policy.

**<u>ANSWER:</u>**     Defendants state that Plaintiff paid a premium for the Policy and the Policy provides certain coverage subject to its terms, conditions, limitations, and exclusions.  Defendants deny the remaining allegations in paragraph 70 of the Petition.

71.     Liberty Mutual Business Income (and Extra Expense) Coverage Form provides "Civil Authority" coverage, which promises to pay "the actual loss of Business Income you sustain and necessary Extra Expense caused by action of Civil Authority that prohibits access to the described premises, provided that both of the following apply:

> (1)     Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage and the described premises are within that area but are not more than one mile from the damaged property; and
> (2) The action of civil authority is taken in response to dangerous physical conditions resulting from a damage or continuation of the covered cause of loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property."

**<u>ANSWER:</u>**     Defendants deny that the Policy contains language as quoted in paragraph 71 of the Petition.  Answering further, Defendants state that the Policy is subject to all of the terms, conditions, limitations, and exclusions set forth therein and deny the allegations in paragraph 71

23

of the Petition to the extent that they are inconsistent with those terms, conditions, limitations, and exclusions.  Defendants deny any remaining allegations in paragraph 71 of the Petition.

72.     The Closure Orders triggered the Civil Authority provision under the Policy.

**ANSWER:**     Defendants deny the allegations in paragraph 72 of the Petition.

73.     Plaintiff has complied with all applicable provisions of its Policy and/or Liberty Mutual has waived those provisions or Liberty Mutual is estopped from asserting them, and yet Liberty Mutual has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage for which Plaintiff is entitled.

**ANSWER:**     Defendants deny the allegations in paragraph 73 of the Petition.

74.     By denying coverage for any Business Losses incurred by Plaintiff in connection with the Closure Orders and Orders intended to mitigate the COVID-19 Pandemic, Liberty Mutual has breached its coverage obligation under the Policy.

**ANSWER:**     Defendants deny the allegations in paragraph 74 of the Petition.

75.     Because of Liberty Mutual's breaches under the Policy, Plaintiff has sustained substantial damages for which Liberty Mutual is liable, in an amount to be established at Trial.

**ANSWER:**     Defendants deny the allegations in paragraph 75 of the Petition.

### COUNT VI- DECLARATORY JUDGMENT-EXTRA EXPENSE COVERAGE

76.     Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 74 as if fully set forth herein.

**ANSWER:**     Defendants repeat and incorporate by reference their responses to the allegations contained in paragraphs 1 through 75 of the Petition as if each were set forth individually and incorporated fully herein.

24

*Clerk of the District Court, Johnson County Kansas*
*10/12/20  08:33am HS*

77.     The Policy is a contract under which Liberty Mutual was paid premium in exchange for its promise to pay Plaintiffs losses for claims covered by the Policy.

**ANSWER:**     Defendants state that Plaintiff paid a premium for the Policy and the Policy provides certain coverage subject to its terms, conditions, limitations, and exclusions.  Defendants deny the remaining allegations in paragraph 77 of the Petition.

78.     Plaintiff has complied with all applicable provisions of its Policy and/or Liberty Mutual has waived those provisions or Liberty Mutual is estopped from asserting them, and yet Liberty Mutual has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiff is entitled.

**ANSWER:**     Defendants deny the allegations in paragraph 78 of the Petition.

79.     Liberty Mutual has denied claims related to COVID-19.

**ANSWER:**     Defendants admit the allegation in paragraph 79 of the Petition.

80.     An actual case or controversy exists regarding Liberty Mutual's obligation under the Policy to reimburse Plaintiff for the full amount of Extra Expense Losses incurred by Plaintiff in connection with Closure Orders and the necessary interruption of its businesses stemming from Orders intended to mitigate the COVID-19 Pandemic.

**ANSWER:**     Defendants deny the allegations in paragraph 80 of the Petition.

81.     Pursuant to KSA 60-1701 *et seq.,* Plaintiff seeks Declaratory Judgment from this Court declaring the following:

      1.     Plaintiff's Business Income Losses incurred in connection with the Closure Order and the necessary interruption of its business stemming from orders

*Clerk of the District Court, Johnson County Kansas*
*10/12/20  08:33am HS*

intended to mitigate the COVID-19 pandemic are insured losses under its policy; and

2.    Liberty Mutual is obligated to pay Plaintiff for the full amount of Extra Expenses Losses incurred and to be incurred in connection with the Covered Losses related to the Closure Order during the period of restoration and the necessary interruption of its businesses stemming from the orders intended to mitigate the COVID-19 pandemic.

**ANSWER:**    Defendants admit that Plaintiff seeks declaratory judgment as described in paragraph 81 of the Petition and deny that the Plaintiff is entitled to the declaratory judgment requested.

### COUNT VII - BREACH OF CONTRACT-EXTRA EXPENSE COVERAGE

82.    Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 80 as if fully set forth herein.

**ANSWER:**    Defendants repeat and incorporate by reference their responses to the allegations contained in paragraphs 1 through 81 of the Petition as if each were set forth individually and incorporated fully herein.

83.    The Policy is a contract under which Liberty Mutual was paid premium in exchange for its promise to pay Plaintiffs losses for claims covered by the Policy.

**ANSWER:**    Defendants state that Plaintiff paid a premium for the Policy and the Policy provides certain coverage subject to its terms, conditions, limitations, and exclusions.  Defendants deny the remaining allegations in paragraph 83 of the Petition.

84.    In the Business Income (and Extra Expense) Coverage Form, Liberty Mutual also agreed to pay necessary Extra Expenses that its insureds incur during the "period of restoration"

26

*Clerk of the District Court, Johnson County Kansas*
*10/12/20  08:33am HS*

37136753.1

107

that the insureds would not have incurred if there had been no direct physical loss or damage to the described premises. "Extra Expense" means expenses "to avoid or minimize the "suspension" of business and to continue operations" and to repair or replace property.

**ANSWER:**   Defendants state that the Policy is subject to all of the terms, conditions, limitations, and exclusions set forth therein and deny the allegations in paragraph 84 of the Petition to the extent that they are inconsistent with those terms, conditions, limitations, and exclusions. Defendants admit that paragraph 84 of the Petition quotes in part a portion of the Policy.

85.   Due to the Closure Orders, Plaintiff incurred Extra Expense of covered property.

**ANSWER:**   Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 85 of the Petition and, accordingly, deny the same.

86.   Plaintiff has complied with all applicable provisions of its Policy and/or Liberty Mutual has waived those provisions or Liberty Mutual is estopped from asserting them, and yet Liberty Mutual has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms.

**ANSWER:**   Defendants deny the allegations in paragraph 86 of the Petition.

87.   By denying coverage for any Business Losses incurred by Plaintiff in connection with the Closure Orders and Orders intended to mitigate the COVID-19 Pandemic, Liberty Mutual has breached its coverage obligation under the Policies.

**ANSWER:**   Defendants deny the allegations in paragraph 87 of the Petition.

88.   Because of Liberty Mutual's breaches of the Policies, Plaintiff has sustained substantial damages for which Liberty Mutual is liable in an amount to be established at trial.

**ANSWER:**   Defendants deny the allegations in paragraph 88 of the Petition.

*Clerk of the District Court, Johnson County Kansas*
*10/12/20  08:33am HS*

## AFFIRMATIVE DEFENSES

Defendants, by way of further answer and defense, allege and state as follows without assuming any burden of proof or persuasion that they do not have under applicable law:

## FIRST AFFIRMATIVE DEFENSE

The Petition fails to state a clam upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

The Policy states, in Section I - Property:

**A. Coverage**

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

(Policy, Form CP 00 10 10 12, page 1 of 17).

There was no direct physical loss of or damage to Covered Property at the premises, and, therefore, there is no coverage under the Policy.

## THIRD AFFIRMATIVE DEFENSE

The Policy defines Covered Cause of Loss as "direct physical loss unless the loss is excluded or limited in this policy."   The Policy contains the following endorsement titled **Exclusion of Loss Due to Virus or Bacteria**:

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTYCOVEAGE PART

STANDARD PROPERTY POLICY

A. The exclusion set forth in Paragraph B. applies to all coverage under all forms and endorsements that comprise this Coverage Part or Policy, including but not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority.

B. We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

28

*Clerk of the District Court, Johnson County Kansas*
*10/12/20  08:33am HS*

However, this exclusion does not apply to loss or damage caused by or resulting from "fungus", wet rot or dry rot. Such loss or damage is addressed in a separate exclusion in this Coverage Part or Policy.

C. With respect to any loss or damage subject to the exclusion in Paragraph B., such exclusion supersedes any exclusion relating to "pollutants".

D. The following provisions in this Coverage Part or Policy are hereby amended to remove reference to bacteria:

1. Exclusion of "Fungus", Wet Rot, Dry Rot And Bacteria; and

2. Additional Coverage - Limited Coverage for "Fungus", Wet Rot, Dry Rot And Bacteria, including any endorsement increasing the scope or amount of coverage.

E. The terms of the exclusion in Paragraph B., or the inapplicability of this exclusion to a particular loss, do not serve to create coverage for any loss that would otherwise be excluded under this Coverage Part or Policy.

(Policy, Form CP 01 40 07 06, page 1 of 1.)

Even if there were direct physical loss or of damage to Covered Property at the premises, there is no coverage under the Policy because of the application of the Virus or Bacteria exclusion.

## FOURTH AFFIRMATIVE DEFENSE

The Policy defines Covered Cause of Loss as "Direct physical loss unless the loss is excluded or limited under Section I – Property." The Policy contains the following Exclusion:

**B. Exclusions**

***

1. We will not pay for loss or damage caused by or resulting from any of the following.

***

l. Discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion, l., does not apply to damage to glass caused by chemicals applied to the glass.

29

*Clerk of the District Court, Johnson County Kansas*
*10/12/20  08:33am HS*

(Policy, Form CP 10 30 10 12, page 5 of 11.)

> Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed.

(Form CP 00 30 10 12, page 9 of 10.)

Even if there were direct physical loss or of damage to Covered Property at the premises, there is no coverage under the Policy because of the application of the Pollution exclusion.

## FIFTH AFFIRMATIVE DEFENSE

The Policy defines Covered Cause of Loss as "Direct physical loss unless the loss is excluded or limited under Section I – Property."  The Policy contains the following Exclusion:

> **B.  Exclusions**
> ***
> 2.  We will not pay for loss or damage caused by or resulting from any of the following.
> ***
> b.  Delay, loss of use or loss of market.

(Policy, Form CP 10 30 10 12, pages 1 & 3 of 11.)

Even if there were direct physical loss or of damage to Covered Property at the premises, there is no coverage under the Policy because of the application of the loss of use exclusion.

## SIXTH AFFIRMATIVE DEFENSE

The Policy defines Covered Cause of Loss as "Direct physical loss unless the loss is excluded or limited under Section I – Property."  The Policy contains the following Exclusion:

> **B.  Exclusions**
> ***
> 3.  We will not pay for loss or damage caused by or resulting from any of the following **3.a.** through **3.c.** But if an excluded cause of loss that is listed in **3.a.** through **3.c.** results in a Covered Cause of Loss,

30

we will pay for the loss or damage caused by that Covered Cause of Loss.

***

b.      Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

(Policy, Form CP 10 30 10 12, page 5 of 11.)

Even if there were direct physical loss or of damage to Covered Property at the premises, there is no coverage under the Policy because of the application of the Acts or Decisions exclusion.

<u>SEVENTH AFFIRMATIVE DEFENSE</u>

The Policy states:

### A. Coverage

#### 1. Business Income

***

We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration".  The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit Of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss.

***

#### 2. Extra Expense

***

b. Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.

(Policy, Form CP 00 30 10 12, page 1 of 10.)

There is no coverage for Business Income and Extra Expense under the Policy.  There was no direct physical loss of or damage to the property at the described premises and no suspension of operations.  Even if there was loss or damage, it was not caused by or did not result from a

31

Covered Cause of Loss in light of the application of the exclusions in the Policy that are set forth in these Affirmative Defenses.

## EIGHTH AFFIRMATIVE DEFENSE

The Policy states:

**a. Civil Authority**

\*\*\*

When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

(1)   Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damage property; and

(2)   The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Civil Authority Coverage for Business Income will begin 72 hours after the time of the first action of civil authority that prohibits access to the described premises and will apply for a period of up to four consecutive weeks from the date on which such coverage began.

Civil Authority Coverage for necessary Extra Expense will begin immediately after the time of the first action of civil authority that prohibits access to the described premises and will end:

(1)   Four consecutive weeks after the date of that action; or

(2)   When your Civil Authority Coverage for Business Income ends;

whichever is later.

(Policy, Form CP 00 30 10 12, page 2 of 10.)

32

There is no coverage for Civil Authority under the Policy. There was no damage to property within one mile from the described premises and, even if there was, any purported damage to property was not caused by a Covered Cause of Loss. The Governor's Executive Orders did not prohibit access to the described premises or the area immediately surrounding any damaged property. The Governor's Executive Orders were not taken in response to dangerous physical conditions resulting from any damage or continuation of the Covered Cause of Loss that caused any damage to property within one mile from the described premises and were not taken to enable a civil authority to have unimpeded access to any damaged property within one mile from the described premises. The Governor's Executive Orders were taken to preserve public health and safety, to ensure that the healthcare delivery system is capable of serving those who are sick and to slow and stop the spread of the coronavirus and Covid-19.

<u>**NINTH AFFIRMATIVE DEFENSE**</u>

Plaintiff's claim and alleged loss or damage are subject to, and limited by, limits, sublimits and deductibles under the Policy.

<u>**TENTH AFFIRMATIVE DEFENSE**</u>

Defendants' obligation to Plaintiff, if any, are subject to offset for recoveries by Plaintiff from other persons or entities, including any governmental entities, for Plaintiff's losses or damages.

<u>**ELEVENTH AFFIRMATIVE DEFENSES**</u>

Plaintiff is not entitled to recover its attorney's fees under its breach of contract cause of action or any other possible cause of action.

33

*Clerk of the District Court, Johnson County Kansas*
*10/12/20  08:33am HS*

## TWELFTH AFFIRMATIVE DEFENSE

Defendants reserve the right to offer and rely on any other terms, conditions, limitations, requirements, deductibles, and exclusions contained in the Policy.  In the event that facts become known through discovery in this action that may support the assertion of additional affirmative defenses or that may cause other terms, conditions, limitations, requirements, deductibles, and/or exclusions contained in the Policy to apply to Plaintiff's claims, Defendants reserve the right to seek leave from this Court to amend their affirmative defenses accordingly.

WHEREFORE, Defendants pray that Plaintiff takes nothing by way of its Petition, that this Court dismiss Plaintiff's Petition with prejudice, enter judgment in favor of Defendants, and grant such other relief as the Court shall deem just and equitable.

Dated:  October 12, 2020

SEYFERTH BLUMENTHAL & HARRIS LLC


*/s/ Bruce A. Moothart*
Bruce A. Moothart, #17263
Seyferth Blumenthal & Harris LLC
4801 Main Street, Suite 310
Kansas City, Missouri 64112
Telephone:  816-285-0559
bruce@sbhlaw.com

Attorneys for Defendants
Liberty Mutual Insurance Company and Ohio
Security Insurance Company

34

*Clerk of the District Court, Johnson County Kansas*
*10/12/20  08:33am HS*

37136753.1

**<u>CERTIFICATE OF SERVICE</u>**

I, Bruce A. Moothart, hereby certify that on the 12th day of October 2020, the foregoing

document was served via the court's efiling system to all counsel of record.

<u>*/s/ Bruce A. Moothart*</u>
Bruce A. Moothart

20CV02929
Div4

## IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS
## CIVIL COURT DEPARTMENT

MNR, LLC.,                                             )
                                                      )
                    Plaintiff,                        )
                                                      )
v.                                                    )        Case No. 20CV02929
                                                      )        Div. No. 4
LIBERTY MUTUAL INSURANCE COMPANY,                     )
*et al.,*                                             )
                                                      )
          Defendants/Counter-Claim Plaintiff.         )

### STIPULATION AND ORDER FOR DISMISSAL OF SEPARATE DEFENDANT
### LIBERTY MUTUAL INSURANCE COMPANY WITHOUT PREJUDICE

COME NOW the parties, by and through their respective counsel, being all parties who have appeared, and stipulate that Separate Defendant Liberty Mutual Insurance Company may be dismissed without prejudice in the above cause, with each party to bear its own costs, pursuant to K.S.A. § 60- 241(a)(ii).

IT IS HEREBY STIPULATED, AGREED AND ORDERED that the Petition against Liberty Mutual Insurance Company is dismissed without prejudice.

/s/ RHONDA K MASON
Dated: 10/28/20

_____          _____
Dated                            District Court Judge

*Clerk of the District Court, Johnson County Kansas*
*10/29/20  08:57am NG*

Submitted by:

**BROWN & RUPRECHT, PC**

By: ___/s/Kurt S. Brack_____
Kurt S. Brack, KS #14797
2323 Grand Blvd, Suite 1100
Kansas City, MO 64108
kbrack@brlawkc.com
(816) 292-7000
(816) 292-7050 (Facsimile)
*Attorney for Plaintiff*


**SEYFERTH BLUMENTHAL & HARRIS LLC**

_/s/Bruce A. Moothart_____
Bruce A. Moothart,   KS #17263
4801 Main Street, Suite 310
Kansas City, MO 64112
(816) 285-0559
bruce@sbhlaw.com
*Attorneys for Defendants Liberty Mutual*
*Insurance Company and Ohio Security*
*Insurance Company*

20CV02929
Div4

## IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS
## CIVIL COURT DEPARTMENT

| | | |
|---|---|---|
| MNR, LLC | ) | |
| | ) | Case No. 20CV02929 |
| Plaintiff, | ) | Division 4 |
| | ) | |
| vs. | ) | |
| | ) | |
| LIBERTY MUTUAL | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

### CERTIFICATE OF SERVICE

The undersigned certifies that on the 8th day of December, 2020, Defendant Liberty

Mutual Insurance Company's First Interrogatories and First Requests for Production of

Documents to Plaintiff were served via e-mail in Word and pdf formats and via US mail, regular

mail to plaintiff's counsel Kurt S. Brack, Esq., BROWN & RUPRECHT, PC, 2323 Grand Blvd.,

Suite 1100, Kansas City, Missouri 64108, kbrack@brlawkc.com.

Respectfully submitted,

**SEYFERTH BLUMENTHAL & HARRIS LLC**

*/s/ Bruce A. Moothart*
Bruce A. Moothart, KS Bar # 17263
4801 Main Street, Suite 310
Kansas City, MO  64112
T: (816) 756-0700
F: (816) 756-3700
bruce@sbhlaw.com
***Attorney for Defendant Liberty Mutual Insurance Company***

*Clerk of the District Court, Johnson County Kansas*
*12/08/20  11:48am ST*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 8, 2020, the foregoing was served via e-mail and the court's efiling system to:

Kurt S. Brack, KS Bar #14797
BROWN & RUPRECHT, PC
2323 Grand Blvd., Suite 1100
Kansas City, Missouri 64108
Telephone: (816) 292-7000
Facsimile: (816) 292-7050
kbrack@brlawkc.com

***Attorney for Plaintiff MNR, LLC***

/s/ Bruce A. Moothart
***Attorney for Defendant Liberty Mutual
Insurance Company***

20CV02929
Div4

## IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS
## CIVIL COURT DEPARTMENT

| | | |
|---|---|---|
| MNR LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 20CV02929 |
| | ) | Division: 4 |
| | ) | |
| OHIO SECURITY INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 29th day of January, 2021, a true and accurate copy of Plaintiffs' Responses to Defendant Ohio Security Insurance Company's First Interrogatories and First Request for Production of Documents, along with a copy of this Certificate of Service were served via email to the following:

Bruce A. Moothart
bruce@sbhlaw.com
Attorney for Defendant
Ohio Security Insurance Company


Respectfully submitted:

**BROWN & RUPRECHT, PC**


By: */s/Kurt S. Brack*
Kurt S. Brack, KS #14797
2323 Grand Boulevard, Suite 1100
Kansas City, MO  64108
(816) 292-7000
(816) 292-7050 (Fax)
kbrack@brlawkc.com
**Attorneys for Plaintiff**


*Clerk of the District Court, Johnson County Kansas*
*01/29/21  12:04pm NG*

# Johnson County Kansas District Court

**CASE NO   20CV02929   MNR LLC vs. LIBERTY MUTUAL INSURANCE COMPANY**
**Div/Judge   4/RHONDA K MASON**
**Chapter   60**
**Nature   OTHER CONTRACT (60)**
**Status   PENDING**

07/10/2020 PETITION AND SUMMONS ISSUED TO ATTORNEY FOR PROCESS SERVER "LIBERTY MUTUAL INSURANCE COMPANY" E/S

07/10/2020 FILE STAMP 07/10/20 09:38am, REQUEST AND SERVICE INSTRUCTION FORM

07/10/2020 FILE STAMP 07/10/20, PETITION

07/10/2020 JUDGE RHONDA K MASON ASSIGNED TO CASE

07/10/2020 NEW CASE E-FILED; MNR LLC VS LIBERTY MUTUAL INSURANCE COMPANY; FILING FEE $196.50; PAID BY BRACK, KURT S, RECEIPTED AMOUNT
$196.50, E-PAYMENT NO: 93647600