IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MNR LLC,

        Plaintiff,

v.                                                         Case No. 21-2078-JWB

OHIO SECURITY INSURANCE
COMPANY,

        Defendant.

**MEMORANDUM AND ORDER**

This matter comes before the court on Defendant's motion for judgment on the pleadings. (Doc. 11.) The motion has been fully briefed and is ripe for decision. (Docs. 12, 13, 19, 22.) For the reasons set forth herein, Defendant's motion is GRANTED.

**I.      Background**

Except as otherwise noted, the following factual allegations are taken from Plaintiff's First Amended Petition filed in state court. (Doc. 1.) Plaintiff MNR LLC d/b/a Hampton Inn, operates two hotels in Colorado. In the spring of 2020, the governor of Colorado issued a series of executive orders in response to the emerging COVID-19 pandemic. Among other things, those executive orders directed employers to reduce their in-person workforce by fifty percent, directed Coloradans to stay home, and directed non-essential businesses to close. Plaintiff contends that those orders resulted in interruptions to its business and loss of business income, along with other expenses, as well as "a direct physical loss of and damage to its property." (Am. Pet. ¶ 31.)

Prior to the pandemic, Defendant issued Plaintiff a policy of insurance (the "Policy") that provided, in relevant part, coverages for business income loss, extra expenses, and related

coverages for involuntary business interruption. The policy period ran from July 25, 2019, to July 25, 2020. Some time prior to April 14, 2020, Plaintiff asserted a claim for its losses under the Business Income (and Extra Expense) Coverage provisions of the Policy. On or about April 14, 2020, Defendant denied coverage on the basis that Plaintiff had not suffered direct physical loss of or damage to its covered property, a prerequisite for coverage under the relevant provisions, and that no surrounding property had suffered direct physical damage or loss as required to trigger the related Civil Authority Coverage (discussed further, *infra*).

Thereafter, on July 10, 2020, Plaintiff filed the underlying state court action in the District Court of Johnson County, Kansas, naming Liberty Mutual Insurance Company as the only defendant. (Doc. 1, exh 1. at 122.) Later, on September 9, 2020, Plaintiff filed its First Amended Petition in the state case naming Defendant as an additional defendant. (Doc. 5 at 63.) Then on October 29, 2020, Plaintiff stipulated to the dismissal of Liberty Mutual from the case. Finally, following some discovery related to the citizenship of Plaintiff, Defendant removed the case to this court on February 11, 2021. (Doc. 1.) In its First Amended Petition, Plaintiff asserts claims for declaratory judgment and breach of contract for Defendant's refusal to provide coverage under the Policy.

**II.     Standard**

"A motion for judgment on the pleadings under Rule 12(c) is treated as a motion to dismiss under Rule 12(b)(6)." *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000). The court will grant a Rule 12(b)(6) motion to dismiss only when the factual allegations fail to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although the factual allegations need not be detailed, the claims must set forth entitlement to relief "through more than labels, conclusions and a formulaic recitation of

2

the elements of a cause of action." *In re Motor Fuel Temperature Sales Practices Litig.*, 534 F. Supp. 2d 1214, 1216 (D. Kan. 2008). The allegations must contain facts sufficient to state a claim that is plausible, rather than merely conceivable. *Id*. "All well-pleaded facts, as distinguished from conclusory allegations, must be taken as true." *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court construes any reasonable inferences from these facts in favor of the plaintiff. *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006).

### III.  Analysis

"A federal court sitting in diversity jurisdiction must apply the substantive law of the state in which it sits, including that state's choice-of-law rules." *Hayden Outdoors, Inc. v. Niebur*, 994 F. Supp. 2d 1206, 1208 (D. Kan. 2014) (quoting *Vazirani & Assoc's Fin., LLC v. Heitz*, No. 11–1032–MLB, 2011 WL 2295027, at *2 (D. Kan. June 8, 2011) (internal citation omitted)). Here the Policy was entered into in Colorado and covers Colorado properties. (Docs. 12 at 8 n.3; 19 at 6-7.) The parties contend, and the court agrees, that Colorado law applies to the interpretation of the Policy. (Docs. 12 at 8 n.3; 19 at 6-7.)

> An insurance policy is merely a contract that courts should interpret in line with well-settled principles of contract interpretation. *See Compass Ins. Co. v. City of Littleton*, 984 P.2d 606, 613 (Colo.1999); *Chacon v. Am. Family Mut. Ins. Co.*, 788 P.2d 748, 750 (Colo.1990). In undertaking the interpretation of an insurance contract, courts should be wary of rewriting provisions, and should give the words contained in the contract their plain and ordinary meaning, unless contrary intent is evidenced in the policy. *Chacon*, 788 P.2d at 750. Courts should read the provisions of the policy as a whole, rather than reading them in isolation. *Simon v. Shelter Gen. Ins. Co.*, 842 P.2d 236, 239 (Colo.1992). Courts may neither add provisions to extend coverage beyond that contracted for, nor delete them to limit coverage. However, because of the unique nature of insurance contracts and the relationship between the insurer and insured, courts do construe ambiguous provisions against the insurer and in favor of providing coverage to the insured. *Chacon*, 788 P.2d at 750. A court's interpretation of an insurance contract is a matter of law, subject to de novo review. *Compass*, 984 P.2d at 613.

*Cyprus Amax Mins. Co. v. Lexington Ins. Co.*, 74 P.3d 294, 299 (Colo. 2003).

In Counts I, II, and III of the First Amended Petition, Plaintiff seeks declaratory judgment arising from, and asserts claims for breach of contract and anticipatory breach of contract for, Defendant's denial of Business Income Coverage under the Policy. In Counts IV and V, Plaintiff seeks declaratory judgment arising from, and asserts a claim for breach of contract for, Defendant's denial of Civil Authority Coverage under the Policy. Finally, in Counts VI and VII, Plaintiff seeks declaratory judgment arising from, and asserts a claim for breach of contract for, Defendant's denial of Extra Expense Coverage under the Policy.

### a. Policy Provisions

All Plaintiff's claims are based on provisions in the Business Income (and Extra Expense) Coverage Form of the Policy. (Policy at CP 00 30 10 12.) Those provisions provide, in relevant part, as follows:

> We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by *direct physical loss of or damage to property* at premises which are described in the Declarations . . . . The loss or damage must be caused by or result from a Covered Cause of Loss.
>
> . . . .
>
> Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no *direct physical loss or damage to property* caused by or resulting from a Covered Cause of Loss.
>
> We will pay Extra Expense (other than the expense to repair or replace property) to:
>     (1) Avoid or minimize the "suspension" of business and to continue operations at the described premises or at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location.
>     (2) Minimize the "suspension" of business if you cannot continue "operations".
>
> . . . .

> When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:
>> (1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and
>> (2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.
>
> "Operations" means . . . Your business activities occurring at the described premises . . . .
>
> . . . .
>
> "Period of restoration" means the period of time that:
>> a. Begins:
>>> (1) 72 hours after the time of direct physical loss or damage for Business Income Coverage; or
>>> (2) Immediately after the time of direct physical loss or damage for Extra Expense Coverage;
>>
>> caused by or resulting from any Covered Cause of Loss at the described premises; and
>> b. Ends on the earlier of:
>>> (1) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or
>>> (2) The date when business is resumed at a new permanent location.
>
> . . . .
>
> "Suspension" means . . . The slowdown or cessation of your business activities;

(*Id.* at 1-2, 9-10 (emphasis added) (some paragraph numbering omitted).)

Under the relevant Policy provisions, all three of the coverages at issue – Business Income, Extra Expense, and Civil Authority – require that harms suffered by Plaintiff result from a Covered Cause of Loss. The term "Covered Cause of Loss" is defined on the Causes of Loss – Special

5

Form as "direct physical loss unless the loss is excluded or limited in this policy." (Policy, CP 10 30 10 12 at 1.) Defendant argues that coverage is excluded under an endorsement addressing loss or damage resulting from a virus. (Doc. 12 at 17.) The endorsement is entitled Exclusion of Loss Due to Virus or Bacteria, and provides, in relevant part, as follows:

> A. The exclusion set forth in Paragraph B. applies to all coverage under all forms and endorsements that comprise this Coverage Part or Policy, including but not limited to forms or endorsements that cover property damage to buildings or personal property *and forms or endorsements that cover business income, extra expense or action of civil authority*.
> B. We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

(Policy, CP 01 40 07 06 (emphasis added).)

### b. Tenth Circuit Authority

While this motion was pending, the United States Court of Appeals for the Tenth Circuit handed down its decision in *Goodwill Indus. of Cent. Oklahoma, Inc. v. Philadelphia Indem. Ins. Co.*, 21 F.4th 704, 710 (10th Cir. 2021). The relevant facts of that case are almost identical to those in this case.

In *Goodwill*, the governor of Oklahoma issued executive orders declaring a state of emergency and ordering closure of certain non-critical businesses in response to the COVID-19 pandemic. Plaintiff Goodwill Industries was forced to close its doors to the public in compliance with those orders, resulting in significant financial losses. Goodwill sued its commercial insurer for declaratory judgment that it was entitled to Business Income coverage, just as Plaintiff did here. *Id.* at 707–08. According to the Tenth Circuit,

> Philadelphia insured Goodwill under a commercial lines policy effective from May 1, 2019 to May 1, 2020. Two key policy provisions governed the coverage issue here. First, the "Business Income" provision stated that "[Philadelphia] will pay for the actual loss of Business Income [Goodwill] sustain[s] due to the necessary 'suspension' of [Goodwill's] 'operations' during the

6

'period of restoration.'" A "suspension" "must be caused by direct physical loss of or damage to property at [the covered] premises." Second, the "Period of Restoration" clause provided that the restoration period begins "72 hours after the time of direct physical loss or damage ... caused by or resulting from any Covered Cause of Loss at the [covered] premises" and "[e]nds on the earlier of: (1) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable and similar quality; or (2) The date when business is resumed at a new permanent location."

The policy also contained a Virus or Bacteria Exclusion. It stated that Philadelphia "will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease."

*Id.* at 708 (record citations omitted).

Applying Oklahoma law, the Tenth Circuit held that "[t]he Business Income provision unambiguously covered only losses stemming from physical alteration or tangible dispossession of property. Neither occurred here. The policy's Period of Restoration clause reinforces this conclusion. So do the decisions of every other circuit and the vast majority of district courts to address this issue." *Id.* at 710. Noting that the policy failed to define "direct physical loss" and neither had the Oklahoma Supreme Court, the court undertook an exercise in dictionary jurisprudence from which it concluded that "a 'direct physical loss' requires an immediate and perceptible destruction or deprivation of property." *Id.*

The court of appeals further noted that its conclusion was buttressed by the Period of Restoration clause in Goodwill's policy, which is materially identical to the corresponding clause in the Policy. As the Tenth Circuit explained,

> The Period of Restoration clause reinforces the conclusion that Goodwill did not suffer a "direct physical loss of or damage" to property. The Business Income provision applied only "during the 'period of restoration,'" which "[e]nds on the earlier of: (1) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or (2) The date when business is resumed at a new permanent location."
>
> The policy thus covered only "direct physical loss of or damage to" property that could be remedied by the physical acts of repairing, rebuilding, or replacing the affected property or by relocating the insured's business. "That the policy

7

>provides coverage until property 'should be repaired, rebuilt or replaced' or until business resumes elsewhere assumes physical alteration of the property, not mere loss of use." *Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, 2 F.4th 1141, 1144 (8th Cir. 2021); *see also Sandy Point Dental, P.C. v. Cincinnati Ins. Co.*, 20 F.4th 327, 332–33 (7th Cir. Dec. 9, 2021). After suspending business due to COVID restrictions, Goodwill had nothing to repair, rebuild, or replace before it could resume operations. Nothing "physical" happened to its property—Goodwill simply had to wait until the government lifted the restrictions.

*Id.* at 711 (record citations omitted).

The policy at issue in *Goodwill* also contained a virus exclusion materially identical to the exclusion in this case. In concluding that this exclusion provided an independent basis to deny coverage, the court of appeals explained:

>"[A] reasonable business person would plainly contemplate that an exclusion for losses 'caused by or resulting from any virus' would extend to losses caused by immediate efforts to mitigate a viral outbreak." *100 Orchard St., LLC v. Travelers Indem. Ins. Co. of Am.*, —— F.Supp.3d ——, ——, 2021 WL 2333244, at *2 (S.D.N.Y. June 8, 2021).
>       As Goodwill conceded in its petition for declaratory relief, "the impending threat of COVID-19 and/or the COVID pandemic" led the Governor to issue the shutdown order. Thus, COVID-19 "caused" the restrictions that forced Goodwill to suspend its operations. No one disputes that COVID-19 is a virus "capable of inducing physical distress, illness or disease." *The plain language of the Virus Exclusion therefore applied to and barred coverage of Goodwill's losses incurred due to the COVID shutdown orders*.
>       Goodwill counters that the Virus Exclusion did not apply because its claim "was for losses due to the pandemic-related Orders—not the presence of the virus itself." This argument assumes that the Virus Exclusion applied only when the virus was physically present at an insured's property. But the Exclusion's text "in no way suggests that the virus must be present at the insured property for the exclusion to apply." *Causeway Auto., LLC v. Zurich Am. Ins. Co.*, 2021 WL 486917, at *5 (D.N.J. Feb. 10, 2021). Under its plain language, the Virus Exclusion was not limited to instances where the virus was physically present at or on Goodwill's property.

*Id.* at 713–14 (record citations omitted) (emphasis added).

### c. Application of *Goodwill* to the Present Case

The operative language of the Policy with respect to Business Income Coverage and the virus exclusion is materially identical to the policy language at issue in *Goodwill*. As was the case

8

in *Goodwill*, the Policy does not define "direct physical loss," and a review of Colorado law reveals no case providing much guidance on the meaning of that phrase or the other operative phrase in the Policy, "direct physical loss of or damage to property." The closest match appears to be *Western Fire Insurance Company v. First Presbyterian Church*, 165 Colo. 34, 437 P.2d 52 (1968) (en banc). In that case, an underground migration of gasoline accumulated around the foundation of a church and the gasoline and associated vapors "infiltrated and contaminated the foundation and halls and rooms of the church building, making the same uninhabitable and making the use of the building dangerous." *Id.*, 437 P.2d at 54. The parties disputed whether this amounted to a "direct physical loss" so as to trigger coverage under the church's insurance policy, or a "loss of use," which was not a covered loss under the policy. *Id.* at 53-55.

The *Western Fire* court concluded that the physical encroachment of the gasoline into the building amounted to a direct physical loss under the policy. *Id.* at 55. Beyond the facts of the case, the court provided no general guidance or definition for interpreting the phrase "direct physical loss." However, the court did state that "[i]t is perhaps quite true that the so-called 'loss of use' of the church premises, standing alone, does not in and of itself constitute a 'direct physical loss.'" *Id.* This statement is likely dicta, but even if it is a binding statement on Colorado law, it is entirely consistent with the Tenth Circuit's conclusions in *Goodwill*.

Based on *Goodwill*, the court concludes that the absence of any allegations that Plaintiff suffered a "physical alteration or tangible dispossession of property," or "an immediate and perceptible destruction or deprivation of property," is fatal to Plaintiff's claims for Business Income Coverage under the Policy.

Moreover, Plaintiff's claims for Extra Expense Coverage and Civil Authority Coverage fare no better. Extra Expense Coverage only applies to expense incurred "during the 'period of

9

restoration' that you would not have incurred if there had been no *direct physical loss or damage to property . . . .*" (Policy, CP 00 30 10 12 at 1.) Under *Goodwill*, no period of restoration ever commenced and no direct physical loss ever occurred because there was no physical damage to the covered property.

Turning to the Civil Authority Coverage, the court notes that the language is somewhat different in that it does not speak in terms of "direct physical loss" or "direct physical loss of or damage to property." Instead, this provision provides for coverage in the event of "damage to property other than property at the described premises," but only when "[t]he action of civil authority is taken in response to *dangerous physical conditions* resulting from the damage or continuation of the Covered Cause of Loss that caused the damage." (Policy, CP 00 30 10 12 at 2 (emphasis added).) Given the reasoning in *Goodwill*, the court doubts that the difference in language here achieves a different result; but even if it did, the virus exclusion would still preclude coverage.

The virus exclusion in the Policy is materially identical to the language at issue in *Goodwill*. The Tenth Circuit unequivocally rejected Goodwill's arguments that its losses were causes by the governor's executive orders rather than the virus itself. *Goodwill*, 21 F.4th at 713-14. Instead, the court of appeals held that

> COVID-19 "caused" the restrictions that forced Goodwill to suspend its operations. No one disputes that COVID-19 is a virus "capable of inducing physical distress, illness or disease." The plain language of the Virus Exclusion therefore applied to and barred coverage of Goodwill's losses incurred due to the COVID shutdown orders.

*Id.* The same reasoning applies here.

Accordingly, the court concludes that the First Amended Petition fails to plead facts sufficient to show that Plaintiff is entitled to Business Income Coverage, Extra Expense

Coverage, or Civil Authority Coverage under the Policy. Defendant is therefore entitled to judgment on the pleadings for all claims.

**IV.     Conclusion**

Based on the foregoing, Defendant's motion for judgment on the pleadings (Doc. 11) is GRANTED. The clerk is directed to enter judgment accordingly.

IT IS SO ORDERED this 14th day of February, 2022.

                                                _s/ John W. Broomes_
                                                JOHN W. BROOMES
                                                UNITED STATES DISTRICT JUDGE